NOT DESIGNATED FOR PUBLICATION

No. 118,232

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ASHLEY MARIE RANDOLPH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed November 9, 2018. Affirmed in part, vacated in part, and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Joan Lowdon*, deputy county attorney, *Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN, J., and ROBERT J. FREDERICK, District Judge, assigned.

PER CURIAM: Leavenworth County Sheriff's officers performed a traffic stop and arrested Ashley Randolph for an outstanding warrant. After arresting Randolph, the officers inventoried Randolph's car to impound it. In the car, the officers found methamphetamine, marijuana, and drug paraphernalia. The State charged Randolph with (1) possession with the intent to distribute at least 3.5 grams but less than 100 grams of methamphetamine, (2) felony possession of paraphernalia, (3) possession of marijuana,

1

and (4) misdemeanor possession of drug paraphernalia. Randolph pled no contest to the first three counts, and the State dismissed the fourth. The trial court granted Randolph a downward durational departure and sentenced her to 72 months in prison for possession with intent to distribute, with concurrent sentences of 15 months for possession of paraphernalia charge and 12 months for possession of marijuana charge. On appeal, Randolph argues that the trial court abused its discretion by denying her motion for a dispositional sentencing departure. We disagree and affirm. She also argues that her 12-month sentence for marijuana possession was illegal. We agree. For the reasons stated below, we affirm in part, vacate in part, and remand with directions to resentence Randolph to a class B misdemeanor conviction under count 3 of the complaint.

On September 19, 2016, Leavenworth County Sheriff's Officers Mark Metcalf and Mark Doud pulled over Ashley Randolph near the intersection of Tenth and Ironmoulders. Officer Metcalf pulled Randolph over because he knew Randolph had an outstanding warrant from Wyandotte County. When Officer Metcalf pulled over Randolph, she had one passenger, Jeremy Tayrien. Tayrien also had an outstanding warrant.

As Officer Metcalf neared the vehicle, he noticed Randolph going through a purse; Randolph told Officer Metcalf the purse was hers. The officers arrested Randolph and Tayrien on their respective warrants and two different officers took Randolph and Tayrien into custody. The purse remained in the car after Randolph and Tayrien were in custody. Officers Metcalf and Doud started the process of impounding the car in accordance with the Leavenworth County Sheriff's office policy.

First, the officers conducted an inventory of the car. Because the purse was in the car, the officers inventoried the purse and its contents. The purse contained Randolph's driver's license and Social Security card, indicating that she owned the purse. Police found a digital scale in the purse. Police also found a small brown clutch inside the purse.

2

The clutch held a spoon, several straws, many empty small plastic bags, four plastic bags containing a crystalline substance, and two plastic bags containing a leafy green substance. Police photographed these items. Officer Metcalf field tested the scale, spoon, and some of the filled bags. The scale, spoon, and one bag tested positive for methamphetamine. A different bag tested positive for marijuana. In total, the police found 7.45 grams of methamphetamine.

The State charged Randolph with four counts: (1) possession with the intent to distribute at least 3.5 grams but less than 100 grams of methamphetamine, a level 2 felony; (2) felony possession of drug paraphernalia, a level 5 felony; (3) possession of marijuana, charged as a class A nonperson misdemeanor; and (4) possession of drug paraphernalia, a class A nonperson misdemeanor. Randolph and the State ultimately reached a plea agreement. Randolph pled no contest to the first three counts as charged. In exchange the State dismissed count four, the misdemeanor paraphernalia charge. The plea did not dictate the terms of sentencing.

Before sentencing, Randolph submitted a motion for a dispositional departure to probation, or alternatively a durational departure. In her motion, Randolph cited four reasons for a departure. (1) She was enrolled in a drug addiction outpatient program after successfully completing inpatient treatment; she also underwent drug usage evaluation that recommended treatment rather than prison. (2) She was seeking employment to support her children. (3) She agreed to a plea instead of going to trial. (4) "Drug usage was an underlying factor of her crime." Randolph got a job by the time the court held the sentencing hearing.

At the sentencing hearing, Randolph did not dispute that her criminal history score was G. Accordingly, the presumptive grid sentence for level 2 felony possession with intent to distribute methamphetamine was 104 months.

3

The State asked the court to impose the presumptive 104-month sentence. The State noted that Randolph mentioned drugs twice in her departure motion, both as an underlying factor of the crime, and her later drug treatment enrollment. The State argued that "the State maintains that these would not be substantial and compelling reasons for a departure in a distribution of methamphetamine case." The State went on to say that K.S.A. 2017 Supp. 21-6815(c)(1)(C), the only section of the sentencing departure law that addresses drugs, does not allow the court to consider lack of substantial capacity for judgment caused by voluntary drug use as a mitigating factor. The State also argued that Randolph's drug distribution had a negative impact on her neighborhood and called a neighbor who testified accordingly.

Randolph argued that she was successfully enrolled in drug treatment and had found a job. Randolph's grandparents spoke about her character and contradicted the neighbor's claims about Randolph bringing criminal activity to the neighborhood. Randolph's pastor also spoke on her behalf.

The court stated during sentencing that it was not considering the neighbor's testimony because police did not find Randolph dealing out of her house. The court addressed the fact that Randolph possessed enough methamphetamine to merit a possession with intent to distribute charge. It stated that "the quantity has risen to a level that the legislature believes it makes you a much more serious person to be involved within that nature." The court noted that "methamphetamine is a large part of this docket now. It has impacted our community and our criminal justice system considerably."

The court ruled that

"as to a dispositional departure, the Court finds that [Randolph has] not met any of the requirements the Court can see with the facts that have been presented to the Court. It's shown progress, it's shown treatment, but that is not something the Court would consider

4

in dealing with this type of offense; or in considering it, it's not enough to justify a dispositional departure."

The court denied Randolph's motion for a dispositional departure but granted her a durational departure from 104 months' to 72 months' imprisonment. The court did so because it found Randolph's distribution efforts were smaller than other large-scale distribution efforts the court had dealt with. The court sentenced Randolph to the standard 15-month sentence for her felony paraphernalia charge and one year for her marijuana possession charge. The court ordered the sentences for the lesser charges to run concurrent with the 72-month methamphetamine possession sentence. Randolph timely appealed.

*Did the Trial Court Misconstrue the Sentencing Departure Factors and Therefore Abuse Its Discretion?*

Appellate courts review the trial court rulings on motions for sentencing departure under an abuse of discretion standard. *State v. Jolly*, 301 Kan. 313, 324, 342 P.3d 935 (2015). A judicial action is an abuse of discretion if: (1) no reasonable person would adopt the view taken by the court; (2) the court bases its decision on an error of law; or (3) the court bases its decision on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). The party claiming that a court abused its discretion bears the burden of showing such an abuse. *State v. Stallings*, 262 Kan. 721, 726, 942 P.2d 11 (1997).

Randolph argues that the trial court abused its discretion because it "misinterpreted the law" governing sentencing departures, and "therefore, misunderstood the extent of its discretion." Randolph argues that the trial court committed an abuse of discretion that falls within the second category listed above: abusing discretion by basing a decision on error of law.

5

First, Randolph claims that the State misled the court by arguing at the sentencing hearing that "voluntary use of intoxicants, drugs or alcohol does not fall within the purview of [K.S.A. 2017 Supp. 21-6815(c)(1)(C)]. Or essentially would not be a reason for substantial and compelling reasons to depart in this particular case." Randolph next claims that the trial court misinterpreted the law when it stated at sentencing that the Legislature has "made clear . . . that voluntary use of the drug is not a defense or not a reason or a justification for a lessening of the sentence." Randolph finally argues that the court misstated (and thus misinterpreted) the law when the judge said that though Randolph had shown progress in drug treatment "that is not something the Court would consider in dealing with this type of offense; or in considering it, it's not enough to justify a dispositional departure."

Randolph argues that the "court's comments support that it did not understand the full extent of the discretion it had." She cites to *State v. Horton*, 292 Kan. 437, 440, 254 P.3d 1264 (2011): "'A tribunal's failure to exercise its discretionary authority is an abuse of discretion.'" Randolph's claim that the court's statements above demonstrate an abuse of discretion fails.

First, as the State explains, placing the State's argument about voluntary drug use in context shows that the State did not misrepresent the law. After Randolph entered her no contest plea, she filed a motion for a dispositional departure, or in the alternative, a durational departure. She made four arguments: (1) she had undergone drug treatment and was still enrolled in a drug treatment program; (2) she had been seeking employment; (3) she had opted for a plea rather than pursuing a trial; and (4) her "[d]rug usage was an underlying factor of her crime."

The State further explains that, because Randolph's motion was vague and failed to cite any statutes, the State was unsure what exactly Randolph meant by "[d]rug usage

6

was an underlying factor of her crime." Accordingly, at the sentencing hearing the State addressed K.S.A. 2017 Supp. 21-6815(c)(1)(C), the only given factor on the nonexclusive list of mitigating circumstances that mentions drugs. K.S.A. 2017 Supp. 21-6815(c)(1)(C) states that a court may consider as a mitigating factor whether the "offender, because of physical or mental impairment, lacked substantial capacity for judgment when the offense was committed. The voluntary use of intoxicants, drugs or alcohol does not fall within the purview of this factor."

The State argued at sentencing:

"In regards to primarily her drug usage, in reviewing the factors of 21-6815, which is a nonexclusive list for the Court to consider in mitigation of the sentence, subsection (c) (1) (C) states that the Court may take into consideration if the offender, because of physical or mental impairment, lacked substantial capacity for judgment when the offense was committed.

"However, that particular subsection continues to say that the voluntary use of intoxicants, drugs, or alcohol does not fall within the purview of this factor. Or essentially would not be a reason for substantial and compelling reasons to depart in this particular case."

In sum, the State attempted to respond to Randolph's argument that "[d]rug usage was an underlying factor of her crime" by arguing that the only express mitigating factor under the sentencing statute that mentions drug use would not be applicable here. The State correctly argued that the "lacked substantial capacity" mitigating factor was not applicable to Randolph's offense because her judgment was impaired by voluntary drug use. The State did not, as Randolph claims, misrepresent that the court *could not* consider a person's pursuit of drug treatment as a mitigating factor. The State argued that the mitigating arguments Randolph proffered "would not be substantial and compelling reasons for a departure in a distribution of methamphetamine case." The State noted that methamphetamine distribution had a notable negative impact on the broader community,

7

and that Randolph's activities were a source of problems and complaints in her neighborhood.

Essentially, while the State did say that Randolph's four arguments "would not be substantial and compelling reasons for a departure in a distribution of methamphetamine case," in context, it seems that the State simply meant that Randolph's arguments did not merit a sentencing departure in the case at hand. The State did not argue that the court was precluded from granting Randolph a sentencing departure as a matter of law. And, the court later clearly indicated that it did not misunderstand the law to preclude a sentencing departure. It stated "as to a dispositional departure, the Court finds that you've not met any of the requirements the Court can see with the facts that have been presented to the Court." This statement indicated that the court understood that Randolph was legally eligible for a departure sentence, but the court nonetheless concluded that the factors in this case did not weigh in favor of a departure sentence.

Similar reasoning dispatches with Randolph's claim that the trial court misinterpreted the law when it stated at sentencing that the Legislature has "made clear . . . that voluntary use of the drug is not a defense or not a reason or a justification for a lessening of the sentence." Here, the trial court was correctly restating the law under K.S.A. 2017 Supp. 21-6815(c)(1)(C). Section (c)(1)(C) explicitly precludes the court from considering as a mitigating factor the defendant's lack of substantial capacity for judgment when the offense occurred if it was caused by voluntary use of drugs.

Finally, the State correctly points out that the trial court did not show it was relying on an error of law when it stated "that is not something the Court would consider in dealing with this type of offense; or in considering it, it's not enough to justify a dispositional departure." Again, the sentence taken as a whole, in context, shows that the court considered the factors introduced by the parties and decided that on the balance, the factors weighed against a dispositional departure.

For the previously mentioned reasons, Randolph's arguments fail. She has not carried her burden to show that the trial court abused its discretion by relying on an error of law.

*Did the Trial Court Abuse Its Discretion by Denying Randolph's Motion for a Dispositional Departure?*

Appellate courts review the trial court rulings on motions for sentencing departure under an abuse of discretion standard. *Jolly*, 301 Kan. at 324. A court does not abuse its discretion when ruling on a motion for sentencing departure if "'reasonable people could agree with the district court's assessment of whether the mitigating circumstances were substantial and compelling.'" *State v. Ballard*, 289 Kan. 1000, 1008, 218 P.3d 432 (2009) (citing *State v. Ortega-Cadelan*, 298 Kan. 157, 165-66, 194 P.3d 1195 [2008]). A court does abuse its discretion when ruling on a motion for sentencing departure if the ruling is based on an error of law or substantial competent evidence does not support a finding of fact that serves as the basis of the court's exercise of discretion. *Jolly*, 301 Kan. at 325. The party alleging that a trial court abused its discretion bears the burden to show that such an abuse occurred. *Stallings*, 262 Kan. at 726.

Here, the trial court granted Randolph a downward durational departure from 104 months' to 72 months' imprisonment. Randolph argues that the trial court nonetheless abused its discretion by denying her request for dispositional departure to probation. She bears the burden to show that no reasonable person would have denied her dispositional departure. See *State v. Smith*, 299 Kan. 962, 970, 327 P.3d 441 (2014) ("A district court abuses its discretion when . . . no reasonable person would take the view adopted by the judge."). This is a heavy burden.

9

Under K.S.A. 2017 Supp. 21-6815(a), "the sentencing judge shall impose the presumptive sentence provided by the sentencing guidelines unless the judge finds substantial and compelling reasons to impose a departure sentence." K.S.A. 2017 Supp. 21-6815(a). The statute provides a nonexclusive list of mitigating and aggravating factors the court may consider when deciding whether to impose a departure sentence.

On appeal, Randolph reiterates the factors she raised during sentencing. First, she accepted responsibility for her crimes. Second, she admitted to having a drug problem and was engaged in drug treatment. Third, she found a job, enjoyed family support from her grandparents, and had obligations to her children. Randolph correctly states that similar factors are recognized as valid mitigating factors weighing in favor of a sentencing departure. At the sentencing hearing, the trial court compared the circumstances of Randolph's case compared to typical methamphetamine distribution cases, noting that she was not found dealing drugs from her house.

The trial court noted aggravating factors during sentencing as well. Police found Randolph with plastic bags of meth, many additional empty bags that more methamphetamine could be placed in, and a scale with methamphetamine residue on it. The court stated that this was evidence that Randolph was "involved in the distribution of methamphetamine." The court noted that together the methamphetamine, bags, and scale indicated that this case was "serious." The court also stated that methamphetamine "has impacted our community and our criminal justice system considerably."

Randolph does not address these aggravating factors in her brief. Randolph does not provide any argument beyond rehashing these factors. She simply

10

reiterates the mitigating factors and states that "[b]ecause the district court's decision denying a dispositional departure was unreasonable, it abused its discretion." She does not explain why the trial court's denial of her motion for a dispositional departure was so unreasonable that "no reasonable person" would agree with the judge's decision. A reasonable person could agree with the judge's decision here to sentence a person convicted of possession with intent to distribute methamphetamine, who was arrested with methamphetamine, baggies, and a scale, to 72 months of a possible 104-month sentence. Randolph has failed to carry her burden to show that the trial court abused its discretion.

*Did the Trial Court Impose an Illegal Sentence on Randolph for Her Conviction for Possession of Marijuana?*

An appellate court may correct an illegal sentence at any time. *State v. Dickey*, 301 Kan. 1018, 1027, 350 P.3d 1054 (2015). A sentence is illegal if it is imposed by a court without jurisdiction, if it does not conform to the applicable statutory provision, or if it is ambiguous with regards to the time and manner in which it will be served. *State v. Trotter*, 296 Kan. 898, 902, 295 P.3d 1039 (2013). Here, the trial court sentenced Randolph to 12 months in jail for her conviction for possession of marijuana. This sentence does not conform to the law in place at the time Randolph committed the offense. Accordingly, the sentence is illegal and this court should remand with directions for the trial court to correct Randolph's sentence for possession of marijuana.

The complaint against Randolph alleged that she possessed marijuana on September 19, 2016. Randolph had no prior convictions for possession of marijuana. The State charged Randolph with possession of marijuana as a class A nonperson misdemeanor. Randolph pled no contest to the charge. The trial court

11

sentenced Randolph to 12 months in county jail for the conviction but ordered the sentence to run concurrent with Randolph's primary 72-month sentence.

The class A charge and resulting sentence were incorrect. Beginning July 1, 2016, Kansas law changed so that first time possession of marijuana is a class B nonperson misdemeanor. K.S.A. 2017 Supp. 21-5706(c)(3); 2016 HB 2462. Under K.S.A. 2017 Supp. 21-5706(c)(3) as it existed during September 2016, a first-time conviction for possession of marijuana should result in a sentence of no more than six months in county jail. K.S.A. 2017 Supp. 21-6602(a)(2). Thus, under the law in place when Randolph committed the offense, the State should have charged Randolph with a class B misdemeanor for the possession of marijuana instead of a class A misdemeanor. As a result, her sentence should not have exceeded six months. On appeal, Randolph and the State agreed that Randolph's 12-month sentence for possession of marijuana was improper and should be adjusted. Thus, we remand this case and direct the trial court to impose a sentence for possession of marijuana consistent with K.S.A. 2017 Supp. 21-5706(c)(3).

Affirmed in part, vacated in part, and remanded with directions.