NOT DESIGNATED FOR PUBLICATION

No. 117,317

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARTAVIOUS OWENS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Seward District Court; LINDA P. GILMORE, judge. Opinion filed November 9, 2018. Convictions affirmed, sentences vacated in part, and case remanded with directions.

*Clayton J. Perkins*, of Kansas Appellate Defender Office, for appellant.

*Tessa French*, special prosecutor, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., ATCHESON and POWELL, JJ.

POWELL, J.:  A jury found Martavious Owens guilty on two counts of rape, one count of aggravated indecent liberties with a child, and two counts of aggravated indecent solicitation of a child. On appeal, Owens argues the State presented insufficient evidence to support his convictions of aggravated indecent solicitation of a child and aggravated indecent liberties with a child. Owens also argues the district court erred in sentencing him by including two Oklahoma deferred judgments as prior convictions in calculating his criminal history score. While we agree with both parties that Owens' criminal history score was incorrectly calculated and therefore vacate portions of his sentence and remand for resentencing, we disagree with Owens' contention that insufficient evidence supported

1

his aggravated indecent liberties and aggravated indecent solicitation convictions and therefore affirm Owens' convictions.

FACTUAL AND PROCEDURAL BACKGROUND

In November 2011, C.J. (born in 1999) was 12 years old and living with her grandmother, A.J., in Tyrone, Oklahoma. C.J. met Owens on Facebook and exchanged phone numbers with him. At the time, Owens was 20 years old. C.J. stated that she talked to Owens as a friend but she could not remember what they talked about. After text messaging for a month or two, C.J. directed Owens to pick her up behind a store in Tyrone so her grandmother would not know. Owens picked up C.J. in his van and drove her to his home in Liberal, Kansas. At his home, Owens took a shower while C.J. waited in his bedroom. After the shower, the two kissed for a few minutes and he tried to go further, but he stopped after C.J. told him no. Later, Owens drove C.J. back to Tyrone and dropped her off at the store.

C.J. stated that she hung out with Owens two more times: in December 2011 and January 2012. Each time, Owens picked up C.J. at the Tyrone store and drove her to his home in Liberal. The second time they hung out, they had sex at his house. The third time Owens and C.J. went to his house and had sex at his house. The two then hung out with different people for a short time, ate at McDonald's, and went to Hooker, Oklahoma. Owens then took C.J. back to Tyrone and dropped her off at the store.

C.J. soon learned she was pregnant. A.J. took C.J. to a nurse practitioner—who confirmed C.J.'s pregnancy—after she asked and C.J. told her she did not know if she was pregnant. The investigation into Owens started after A.J. contacted the Tyrone Police Department. Later testing confirmed that there was a 99.999% probability that Owens was the father of C.J.'s baby.

2

Andy Walters, an investigator with the Texas County (Oklahoma) Sheriff's Office, testified she interviewed C.J. in April 2012. At that time, C.J. was 18 weeks pregnant. Walters stated C.J. told her Owens took her back to his bedroom where they kissed a little bit and that he tried to unbutton her pants, but he stopped after she told him no. Walters testified that C.J. said she and Owens had sex the second time they hung out, and that the third time C.J. met with Owens, they ate at McDonald's, hung out with a group of people, went to his home, and went back to his bedroom and had sex. Walters also interviewed Owens in June 2012. At that time, Owens told Walters that he was 20 years old and that he met C.J. on Facebook. Owens told Walters that he drove to Tyrone, picked up C.J., and drove her to his home in Liberal about four times and that he had sex with C.J. two times.

The State charged Owens with nine counts, including two counts of rape, one count of aggravated indecent liberties with a child, three counts of aggravated indecent solicitation of a child, and three counts of aggravated interference with a parent. After the State presented the above evidence at trial, Owens moved the district court for a directed verdict. The district court partially granted Owens' motion and dismissed the three aggravated parental interference charges. After closing argument, the jury acquitted Owens of one count of aggravated indecent solicitation of a child but found him guilty of the remaining five counts.

Before sentencing, the presentence investigation (PSI) report scored Owens' two Oklahoma deferred judgments for the abduction of a child under the age of 15 as two adult person felonies and calculated his criminal history score as B. Owens moved the district court for both dispositional and durational departures, and at sentencing the district court agreed there were substantial and compelling reasons to depart. The district court dispositionally departed Owens' off-grid offenses to the sentencing grid and durationally departed his prison sentence to a total controlling sentence of 155 months' in prison and lifetime postrelease supervision.

Owens timely appeals.

## DOES SUFFICIENT EVIDENCE SUPPORT OWENS' CONVICTIONS?

Owens argues the State presented insufficient evidence to support his convictions on the two counts of aggravated indecent solicitation of a child and the aggravated indecent liberties with a child.

> "'When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.' '"In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility."' An appellate court will reverse a guilty verdict even if the record contains some evidence supporting guilt only in rare cases when the court determines that evidence was so incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt. [Citations omitted.]" *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018).

### A.      *Aggravated Indecent Solicitation of a Child*

Owens claims the State presented insufficient evidence to support his convictions for aggravated indecent solicitation of a child under K.S.A. 2011 Supp. 21-5508(b)(2) because the State presented no evidence establishing that he specifically communicated an invitation or enticement to C.J. to enter a building, room, or secluded place and that he did so with an intent to commit rape.

Owens relies on *State v. Nelson*, No. 115,900, 2017 WL 2709816, at *7 (Kan. App. 2017) (unpublished opinion), *rev. denied* 308 Kan. ___ (June 20, 2018), for support that "[t]he essence of the crime of aggravated indecent *solicitation* is not committing the enumerated unlawful sexual act, but rather, inviting or attempting to persuade a child to

enter a place with the intent to commit an unlawful sexual act." Owens claims that the State presented insufficient evidence because it put forth no evidence of the content of his communications to C.J. and did not show that he specifically communicated either "explicitly sexual or potentially innocent statements followed by actions that underscored [an] intent to commit a specific unlawful sexual act." 2017 WL 2709816, at *6.

As the State concedes, Kansas cases involving aggravated indecent or indecent solicitation of a child offenses typically involve an express statement. See *State v. Hill*, 271 Kan. 929, 942, 26 P.3d 1267 (2001) (holding that after sexually assaulting 13-year-old, comment of "So where are we going to get it on?" prior to again sexually assaulting girl sufficient evidence of solicitation), *abrogated on other grounds by State v. Voyles*, 284 Kan. 239, 160 P.3d 794 (2007); *Nelson*, 2017 WL 2709816, at *1, *7 (holding that asking 10-year-old girl "Will you go to the male's restroom with me?" sufficient evidence of intent to commit unlawful sexual act); *State v. Stout*, No. 103,202, 2011 WL 6942926, at *1-3 (Kan. App. 2011) (unpublished opinion) (holding sufficient evidence based on defendant driving up alongside 13-year-old girl and asking, "Will you give me the time?"; driving away from girl when she ignored him; and later being seen by group of middle school girls masturbating in car in middle school parking lot). It is also true that the State presented no direct evidence establishing the content of Owens' and C.J.'s conversations leading up to the two rape offenses, and Walters admitted that she did not collect either the Facebook or text message conversations.

To the extent Owens' argument requires an interpretation of K.S.A. 2011 Supp. 21-5508(b)(2), this court exercises an unlimited review. See *State v. Warren*, 307 Kan. 609, 612, 412 P.3d 993 (2018).

"Statutory interpretation begins with 'the fundamental rule that we give effect to the legislature's intent as it is expressed in the statute. Courts must apply a statute's language when it is clear and unambiguous, rather than determining what the law should

5

be, speculating about legislative intent, or consulting legislative history.' Stated differently, '[w]hen the language is plain and unambiguous, an appellate court is bound to implement the expressed intent.' [Citations omitted]" *State v. Williams*, 298 Kan. 1075, 1079, 319 P.3d 528 (2014).

The district court instructed the jury on the two counts of aggravated indecent solicitation of a child under K.S.A. 2011 Supp. 21-5508(b)(2):

> "To establish this charge, each of the following claims must be proved:
>
> "1.     The defendant with the intent to commit rape, enticed or invited C.J. to enter a building, room or secluded place.
>
> "2.     At the time of the act, C.J. was less than 14 years old. The State need not prove the defendant knew the child's age.
>
> "3.     This act occurred between December 1st, 2011 and January 31st, 2012 in Seward County, Kansas.
>
> "Rape is defined as sexual intercourse with a child who is less than 14 years old."

The common meanings of entice and invite do not necessarily require a verbal or specific communication. Black's Law Dictionary 649 (10th ed. 2014) defines entice as: "To lure or induce; esp[ecially], to wrongfully solicit (a person) to do something." Black's Law Dictionary does not define invite in a criminal context, but it does provide a definition for invitation as: "*n. Torts*. In the law of negligence, the enticement of others to enter, remain on, or use property or its structures; conduct that justifies others in believing that the possessor wants them to enter. Cf. permission (3).—**invite,** *vb*." Black's Law Dictionary 955. Webster's New World College Dictionary 485, 765 (5th ed. 2016) defines entice as "to attract by offering hope of reward or pleasure; tempt; allure –*SYN.* lure" and invite as "**1** to ask courteously to come somewhere or do something; request the presence or participation of . . . **4** to tempt; allure; entice."

Likewise, our courts also have defined the act requirement in a crime of soliciting another to commit first-degree murder as:

6

"Solicitation is a specific intent crime under Kansas law. A person is not guilty of solicitation unless he or she intentionally commits the actus reus of the offense, *viz.*, he or she commands, encourages, or requests another person to commit a felony with the specific intent that the other commit the crime he or she solicited. *The actus reus of the solicitation occurs under Kansas law if a person by words or actions invites, requests, commands, or encourages a second person to commit a crime*. The crime is complete when the person communicates the solicitation to another with the requisite mens rea. No act in furtherance of the target crime needs to be performed by either person." (Emphasis added.) *State v. DePriest*, 258 Kan. 596, 604, 907 P.2d 868 (1995).

The State argues that we should find sufficient evidence supports Owens' two convictions for aggravated indecent solicitation of a child based on Owens' established conduct that he invited or enticed C.J. to his home with the intent to commit rape. The State points to these facts: (1) Owens picked up C.J. at the Tyrone store and drove her to his home in Liberal three times; (2) Owens and C.J. kissed in his bedroom the first time for a few minutes but stopped after C.J. told Owens no when he tried to go further; (3) the second and third times, the two met up in the same manner but had sex at Owens' home.

Essentially, the State argues that the circumstantial evidence provides sufficient evidence that Owens twice invited or enticed C.J. to enter a building, room, or secluded place with the intent to commit rape. See K.S.A. 2011 Supp. 21-5508(b)(2).

"'Circumstantial evidence in law is evidence that tends to prove a fact in issue by proving other events or circumstances which, according to the common experience of mankind, are usually or always attended by the fact in issue, and therefore affords a basis for a reasonable inference by the jury . . . of the fact in issue.' [Citation omitted]" *State v. Thach*, 305 Kan. 72, 82, 378 P.3d 522 (2016).

"Direct evidence is such evidence which, if believed, proves the existence of a fact without inference or presumption, as for example the testimony of an eyewitness as to

7

what he or she actually saw, heard, or touched." *State v. Scaife*, 286 Kan. 614, 620, 186 P.3d 755 (2008). Our Supreme Court has explained:

> "The probative values of direct and circumstantial evidence are intrinsically similar, and there is no logically sound reason for drawing a distinction as to the weight to be assigned to each. Consequently, like with direct evidence, an appellate court does not reweigh the circumstantial evidence supporting a conviction against the circumstantial evidence supporting a not-guilty verdict. Instead, the appellate court's function is to determine if the direct and circumstantial evidence, viewed in a light most favorable to the State, could have reasonably supported a rational factfinder's guilty verdict." *State v. Darrow*, 304 Kan. 710, Syl. ¶ 3, 374 P.3d 673 (2016).

In addition, "'[a] conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference.' [Citation omitted.]" *State v. Brown*, 306 Kan. 1145, 1157, 401 P.3d 611 (2017). Our Supreme Court has held that "intent may be shown by circumstantial evidence, and a person is presumed to intend all the natural consequences of his or her acts." *State v. Killings*, 301 Kan. 214, Syl. ¶ 2, 340 P.3d 1186 (2015). But

> "convictions based entirely upon circumstantial evidence 'can present a special challenge to the appellate court' because 'the circumstances in question must themselves be proved and cannot be inferred or presumed from other circumstances.' Where the State relies on such inference stacking, *i.e.*, where the State asks the jury to make a presumption based upon other presumptions, it has not carried its burden to present sufficient evidence. [Citations omitted.]" *State v. Banks*, 306 Kan. 854, 859, 397 P.3d 1195 (2017).

Our Supreme Court has explained that while the State cannot "rely upon the theory that presumption A leads to presumption B leads to presumption C leads to fact D, it is perfectly proper for the State's case to be grounded upon a theory that presumption A, presumption B, and presumption C all separately point to fact D." 306 Kan. at 861.

8

When viewing the evidence in the light most favorable to the State, which is how we are to view the evidence in sufficiency challenges, we conclude the State presented sufficient evidence to support the two convictions, although the determination is a closer call on the first count than on the second count of aggravated indecent solicitation. See *Darrow*, 304 Kan. 710, Syl. ¶ 3.

For the first conviction, the State established that the first time Owens picked up C.J. and drove her to his home, C.J. either went or Owens led her to his bedroom; once there, Owens and C.J. kissed for a few minutes; Owens tried to go further or tried to unbutton her pants, but C.J. told him no. Owens took C.J. home, and the two continued to text message. On a later date, Owens picked up C.J. and drove her to his home a second time, where the two had sex. From this evidence, a rational fact-finder could find that Owens had an intent to commit rape based on his prior actions in his bedroom the first time he and C.J. kissed. Additionally, a rational fact-finder could find that Owens invited or enticed C.J. through his actions or words to go into his house with the requisite intent.

The State also presented sufficient evidence to support Owens' second conviction for aggravated indecent solicitation of a child. From the evidence, the State established that C.J. and Owens had had sex before. Additionally, Walters testified that C.J. stated the two were with a group of people that day but later went to Owens' bedroom and had sex. Given C.J.'s and Owens' previous interactions, a rational fact-finder could conclude that Owens had the intent to commit rape when he and C.J. went to his bedroom. A reasonable fact-finder could also find that by leaving a group of people in his house, Owens invited or enticed C.J. through actions or words to go to his bedroom. The State presented sufficient evidence to support Owens' two convictions for aggravated indecent solicitation of a child.

B.      *Aggravated Indecent Liberties with a Child*


Owens also argues that the State presented insufficient evidence to support his conviction for aggravated indecent liberties with a child. Aggravated indecent liberties with a child occurs when the child is under 14 years old and the defendant engages in "[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both." K.S.A. 2011 Supp. 21-5506(b)(3)(A).


To establish Owens' guilt, the State needed to prove:  (1) Owens lewdly touched C.J.; (2) the lewd touching was intended to arouse or satisfy the sexual desires of either himself, C.J., or both; (3) C.J. was under the age of 14 at the time of the act; and (4) the conduct took place in Seward County between December 1, 2011, and January 31, 2012.


Owens argues insufficient evidence exists to support the element that he lewdly touched C.J. based on the evidence he kissed C.J.


Our Supreme Court has explained that


> "a touch is prohibited if it meets the common meaning of the term 'lewd,' *i.e.*, if the touch is sexually unchaste or licentious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; or indecent, obscene, or salacious. In considering if a touch is lewd, a factfinder should consider whether the touch tends to undermine the morals of a child and is so clearly offensive as to outrage the moral senses of a reasonable person." *State v. Reed*, 300 Kan. 494, Syl. ¶ 1, 332 P.3d 172 (2014), *cert. denied* 135 S. Ct. 1566 (2015).


"Whether a touching is lewd depends upon the totality of the circumstances and is a question for the jury. Accordingly, whether the action offends the moral senses of a reasonable person is a determination left to the jury." *State v. Rutherford*, 39 Kan. App.

10

2d 767, 776, 184 P.3d 959, *rev. denied* 286 Kan. 1884 (2008). We do not reweigh such evidence on a sufficiency review. *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

Viewing the evidence in the light most favorable to the State, we conclude the State presented sufficient evidence to support Owens' conviction. C.J. testified she and Owens kissed for a few minutes; Owens tried to go further and he stopped when C.J. told him no. The State also presented evidence that C.J. had stated in an earlier interview with investigators that she told Owens to stop when he tried to unbutton her pants while they were kissing. This latter fact is significant because it lends credence to the State's theory that the kissing was not merely innocent but more lewd in nature. Moreover, the act occurred when Owens was 20 and C.J. was 12 years old. Based on this evidence, a rational fact-finder could find that Owens' act of kissing C.J. was not platonic but was designed to arouse sensual desire, meaning the State presented sufficient evidence to prove Owens guilty of aggravated indecent liberties with a child beyond a reasonable doubt.

Owens argues this court's decisions in *State v. Stout*, 34 Kan. App. 2d 83, 114 P.3d 989, *rev. denied* 280 Kan. 991 (2005), and *Rutherford*, 39 Kan. App. 2d 767, support his insufficient evidence claim because the evidence he kissed C.J. is not so offensive as to offend the moral senses of a reasonable person. Owens, however, admits the cases are highly distinguishable. We agree.

In *Stout*, the panel held that the State presented sufficient evidence to support Stout's conviction for unlawful sexual relations.

> "The undisputed facts, when viewed in the light most favorable to the State, support the occurrence of a lengthy, 'good,' 'deep,' 'passionate,' 'intimate,' 'romantic,' and 'memorable' French kiss in the bed of the defendant after an overnight stay, and the kiss achieved emotional arousal and was followed by professions of true love and repeated

11

encounters involving the same conduct. Intent may be shown by acts, circumstances, and reasonable inferences. Ordinarily, a person intends all of the usual consequences of his or her voluntary acts. When the facts of a case can be interpreted to support either the State's or the defendant's theory, our standard of review compels us to conclude that the evidence was sufficient. We are convinced that a rational jury could have found Stout guilty beyond a reasonable doubt. [Citations omitted.]" 34 Kan. App. 2d at 89.

Owens argues that, unlike in *Stout*, the evidence here does not establish that he repeatedly French kissed C.J. Although the evidence did not describe the kiss between C.J. and Owens in as much detail as in *Stout*, C.J. stated that the two kissed for a few minutes and stopped after Owens tried to go further and she told him no. C.J.'s description to investigators before trial and at trial of the kiss and Owens' efforts at unbuttoning her pants provides sufficient evidence that Owens lewdly touched C.J. A rational fact-finder could have found Owens guilty beyond a reasonable doubt.

Owens also argues that the kiss would not offend a reasonable person because he did not kiss an extremely young child as occurred in *Rutherford*. In *Rutherford*, the panel held that the State presented sufficient evidence that the defendant kissed a 4-year-old girl "in a manner that amounts to lewd fondling and touching with the intent to arouse his or [the child's] sexual desires." 39 Kan. App. 2d at 777.

The factual differences between the cases lead us to conclude that *Rutherford* does not support Owens' theory that there was insufficient evidence to convict him of aggravated indecent liberties with a child. The State must show the child was under 14 years old when the lewd touching occurred. The State established C.J. was 12 years old at the time of the kiss. Moreover, the jury, as the fact-finder, found the evidence credible. We find that the State presented sufficient evidence to support Owens' conviction for aggravated indecent liberties of a child.

12

III.    DID THE DISTRICT COURT ERR IN INCLUDING TWO OKLAHOMA DEFERRED JUDGMENTS IN CALCULATING OWENS' CRIMINAL HISTORY SCORE?

Owens argues and the State concedes that the district court improperly included two Oklahoma deferred judgments as prior convictions to calculate his criminal history score as B contrary to our Supreme Court's decision in *State v. Hankins*, 304 Kan. 226, 238-39, 372 P.3d 1124 (2016) (Oklahoma deferred judgments not convictions because no judgment of guilt entered). Both parties agree that Owens' criminal history score should be an I without the Oklahoma deferred judgments.

"Whether a sentence is illegal is a question of law subject to unlimited review." 304 Kan. at 233. "K.S.A. 22-3504(1) specifically authorizes a district court to 'correct an illegal sentence at any time,'" meaning a defendant may challenge a sentence as illegal for the first time on appeal. *State v. Dickey*, 301 Kan. 1018, Syl. ¶ 1, 350 P.3d 1054 (2015). A defendant can also challenge a sentence as illegal—despite a lack of objection below—as a matter of law based on how the district court classified or counted his or her prior convictions for determining his or her criminal history score. 301 Kan. 1018, Syl. ¶ 3.

As it is undisputed that the district court used the incorrect criminal history score in sentencing Owens, there is no doubt as to the sentence's illegality. However, the extent of the illegality is in question as the parties differ as to the scope of the district court's resentencing authority.

Owens argues that the district court imposed a legal sentence, the incorrect criminal history score notwithstanding, because the court, when granting a double departure on his three Jessica's Law crimes, correctly used the criminal history score of I to sentence him. As a result, Owens argues that we may limit the district court's discretion at resentencing on remand to changing his criminal history from a B to I and

13

determining if a further departure is necessary. The State argues that the district court should have full discretion during the resentencing hearing.

As we will explain, our review of the sentencing transcript shows that the district court committed two principal errors in how it sentenced Owens. First, the district court erred in how it departed from the presumptive sentences for Owens' Jessica's Law off-grid crimes—two counts of rape and a single count of aggravated indecent liberties with a child—and second, by designating one of Owens' rape counts as the primary offense. Parenthetically, we note that the sentencing journal entry attempted to correct the latter error, but overall the journal entry departs from the district court's actual sentence in a number of respects. Fortunately, the journal entry's errors are of no importance because "a criminal sentence is effective when pronounced from the bench; it does not derive its effectiveness from the journal entry. . . . [W]here the sentence announced from the bench differs from the sentence later described in the journal entry, the orally pronounced sentence controls." *Abasolo v. State*, 284 Kan. 299, 304, 160 P.3d 471 (2007).

Owens was convicted of two counts of rape of a child under 14 years of age contrary to K.S.A. 2011 Supp. 21-5503(a)(3) and one count of aggravated indecent liberties with a child under 14 years of age contrary to K.S.A. 2011 Supp. 21-5506(b)(3)(A). Because Owens was over 18 years of age at the time he committed these crimes, they are classified as off-grid crimes. See K.S.A. 2011 Supp. 21-5503(b)(2); K.S.A. 2011 Supp. 21-5506(c)(3). As off-grid sex offenses, the Kansas Sentencing Guidelines Act (KSGA) required that Owens be sentenced to a term of imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years for each of these crimes. See K.S.A. 2011 Supp. 21-6627(a)(1)(B), (C).

K.S.A. 2011 Supp. 21-6627(d)(1) allows a departure from the mandatory life sentence if the sentencing court finds substantial and compelling reasons to depart based upon a review of the mitigating circumstances. Once a departure sentence is authorized,

14

K.S.A. 2011 Supp. 21-6627(d)(1) requires the sentencing court to impose a departure sentence in accordance with the KSGA. Our Supreme Court has explained that "[a] sentencing judge who departs from the mandatory minimum of Jessica's Law should look to the severity level assigned to the crime when it lacks the element of disparity between the defendant's and the victim's ages." *State v. Spencer*, 291 Kan. 796, 827, 248 P.3d 256 (2011). "Once sentencing has shifted to the KSGA, nothing precludes the sentencing court from granting a further departure, either dispositional or durational." *State v. Jones*, 293 Kan. 757, 759-60, 268 P.3d 491 (2012). That is what the district court did here.

As allowed by the KSGA, the district court granted Owens departures from his three Jessica's Law off-grid sentences. The parties do not dispute that a review of Owens' mitigating circumstances provided the district court with substantial and compelling reasons to depart from the mandatory life sentence. According to the sentencing transcript, the district court designated Owens' two rape offenses as severity level 1 offenses—the correct severity level without the age modifiers—then applied Owens' B criminal history score to determine a presumptive sentence range of 618, 586, or 554 months according to the appropriate KGSA grid box. See K.S.A. 2011 Supp. 21-5503(b)(1)(B); K.S.A. 2011 Supp. 21-6804(a). The district court then further durationally departed, relying on the same mitigating factors that warranted the departure to the KSGA sentencing grid, to the criminal history score I grid box for a severity level 1 offense and imposed the standard 155-month prison sentence for each rape offense. Similarly for Owens' aggravated indecent liberties offense, the district court designated the crime as a severity level 3 offense—again, the correct severity level without the age modifiers—and then applied Owens' B criminal history score to determine a presumptive sentence range of 228, 216, or 206 months according to the appropriate KGSA grid box. See K.S.A. 2011 Supp. 21-5506(c)(2)(C); K.S.A. 2011 Supp. 21-6804(a). Again, relying on the same departure factors, the district court further durationally departed to the criminal history score I grid box for a severity level 3 offense and imposed the standard 59-month prison sentence.

15

The district court erred in applying a B criminal history score to the departure process. Instead of departing to the appropriate KSGA grid box for a defendant with a criminal history score of I for each Jessica's Law off-grid crimes, the district court first departed to the sentencing grid box for a defendant having a B criminal history score and then further durationally departed to the appropriate box for an I criminal history score. Owens argues that because the district court used the sentencing grid box corresponding to the correct criminal history score of I, his sentences for the Jessica's Law off-grid offenses are legal ones, meaning the district court should not be allowed to impose a higher sentence at resentencing, only an even lower one. We disagree.

To avoid ordering an illegal sentence when departing to the grid for off-grid crimes, the district court must make the analytical path of departure clear. See, e.g., *Jones*, 293 Kan. at 760; *State v. Jolly*, 291 Kan. 842, 846-47, 249 P.3d 421 (2011). In *Jones*, our Supreme Court applied *Jolly* to hold that the district court entered an illegal sentence because "the sentencing court did not acknowledge Jones' presumptive sentence under the KSGA. Nor did the sentencing court discuss aggravating factors that would justify the upward departure from the presumptive guidelines sentence. Rather, the court merely skipped from life imprisonment to 120 months at the suggestion of the parties." *Jones*, 293 Kan. at 761. The *Jones* court further "recognized that a two-step departure is possible, but 'the requirements of neither the first step into the guidelines nor the second step away from the presumptive guidelines sentence can be ignored, and all departure procedures must be followed.' *Jolly*, 291 Kan. at 847." *Jones*, 293 Kan. at 760.

Owens' sentences for his three Jessica's Law crimes are illegal and must be vacated because the district court failed to properly follow the first step in the departure process: departing to the appropriate KSGA sentencing grid box. The district court improperly departed to the criminal history score B sentencing grid box instead of to the criminal history score I sentencing grid box, thus deviating from the proper two-step departure process at the outset. This necessitates resentencing. At resentencing, however,

16

given that the parties do not dispute the mitigating factors justifying both the dispositional departure to the KSGA sentencing grid and a further durational departure, the district court would appear to have the discretion to depart durationally further downward should it choose to do so. Should the district court wish to durationally depart upward from the appropriate I criminal history score grid box, then the district court would have to make adequate aggravating factor findings to justify such an upward departure.

We turn next to whether Owens' sentences for his two counts of aggravated indecent solicitation of a child under 14 are illegal due the district court's use of an incorrect criminal history score. But before we do, we must first address the district court's second sentencing error: its improper designation of one of the rape counts as the primary offense.

Owens was convicted of five crimes, meaning his case is a multiple conviction case: "a case involving multiple crimes arising under a single charging document." *State v. Bolin*, 266 Kan. 18, 19, 968 P.2d 1104 (1998). When a district court sentences a defendant in a multiple conviction case,

> "[t]he sentencing judge shall establish a base sentence for the primary crime. The primary crime is the crime with the highest crime severity ranking. *An off-grid crime shall not be used as the primary crime in determining the base sentence when imposing multiple sentences*. If sentences for off-grid and on-grid convictions are ordered to run consecutively, the offender shall not begin to serve the on-grid sentence until paroled from the off-grid sentence, and the postrelease supervision term will be based on the off-grid crime. If more than one crime of conviction is classified in the same crime category, the sentencing judge shall designate which crime will serve as the primary crime." (Emphasis added.) K.S.A. 2011 Supp. 21-6819(b)(2).

As this language makes clear, a sentencing court cannot use an off-grid offense—even if it is the highest severity level offense based on a departure to the KSGA grid—as the primary crime in a multiple-conviction case. Moreover, a departure to a KSGA grid sentence, as was done here by the district court, does not change the nature of an off-grid offense. See *State v. Ballard*, 289 Kan. 1000, 1012, 218 P.3d 432 (2009). A sentencing court's designation of an off-grid offense as the primary crime in a multiple-conviction case results in an illegal sentence. *State v. Redick*, 307 Kan. 797, 809, 414 P.3d 1207 (2018).

According to the sentencing transcript, the district court designated count one, rape, as the primary offense. As we have explained, this was error because an off-grid crime such as rape cannot be designated as the primary crime even when the district court departs to the grid at sentencing. In fact, only two of Owens' five crimes may be designated as the primary crime—his two aggravated indecent solicitation crimes—because they are not off-grid offenses.

Aggravated indecent solicitation of a child is a severity level 5 person felony, which means it is not an off-grid offense. K.S.A. 2011 Supp. 21-5508(c)(2). Accordingly, one of these crimes should have been designated as the primary crime in order to calculate Owens' base sentence. See K.S.A. 2011 Supp. 21-6819(b)(3) ("The base sentence is set using the total criminal history score assigned."). Nonbase sentences, which are the sentences imposed for crimes other than the primary crime, do not have the criminal history score applied, which is the same as applying an I criminal history score. K.S.A. 2011 Supp. 21-6819(b)(5). The district court should have determined Owens' base sentence by designating one of his aggravated indecent solicitation of a child crimes as the primary crime and matching Owens' correct criminal history score of I with the severity level 5 sentencing grid box to yield a presumptive base sentence of 34, 32, or 31 months. See K.S.A. 2011 Supp. 21-6804(a).

18

Interestingly, the district court did not wander far from the correct sentencing path. While the district court mistakenly designated one rape charge as the primary offense, the district court did not apply Owens' incorrect B criminal history score to his aggravated indecent solicitation of a child crimes to create incorrect sentences. Instead, the district only applied an I criminal history score to these crimes and imposed what it thought were the standard nonbase sentences of 32 months for each offense. For one of the counts, this yielded an arguably correct sentence. However, because one of the counts was not designated as the primary crime, the sentence is still illegal and must be vacated. See *Hankins*, 304 Kan. at 238 (sentence length within proper range does not make sentence legal). For the second conviction, which was not the primary crime, the district court's use of an I criminal history score was correct, making the sentence for the second aggravated indecent solicitation conviction legal. Because a legal sentence cannot be altered at resentencing after remand, the district court may not resentence on this count. See *Warren*, 307 Kan. at 612-13.

To recap, all of Owens' convictions are affirmed. Owens' sentences for the two convictions of rape, one count of aggravated indecent liberties with a child, and one count of aggravated indecent solicitation of a child are illegal and are vacated with directions for the district court to resentence on those counts. Owens' sentence for conviction of the second aggravated indecent solicitation of a child count is a legal sentence and may not be resentenced.

Convictions affirmed, sentences vacated in part, and case remanded with directions.