No. 100,057

STATE OF KANSAS, *Appellee*, v. JASON BALLARD, *Appellant*.

(218 P.3d 432)

Opinion filed November 6, 2009.

*Randall L. Hodgkinson,* of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*David Lowden,* chief attorney, appellate division, argued the cause, and *Kristi L. Barton,* assistant district attorney, *Nola Tedesco Foulston,* district attorney, and *Steve Six,* attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

NUSS, J.: Jason Ballard directly appeals his sentence for committing aggravated indecent liberties with a child, an off-grid person felony under K.S.A. 2006 Supp. 21-3504(a)(3)(A) and (c). More specifically, he appeals the district court's refusal to grant probation and its imposition of lifetime postrelease supervision without eligibility for good time credit. Our jurisdiction is pursuant to K.S.A. 22-3601(b)(1) (conviction of an off-grid crime).

The issues on appeal, and our accompanying holdings, are as follows:

1. Did the district court abuse its discretion in denying a downward dispositional sentencing departure to probation? No.
2. Did the district court err in changing Ballard's originally imposed postrelease supervision period from 36 months to lifetime supervision? No.
3. Did the district court err in finding Ballard ineligible for good time credit? Yes.

Accordingly, we affirm in part, reverse in part, and remand for resentencing with directions.

## FACTS

Jason Ballard was charged with aggravated indecent liberties with a child pursuant to K.S.A. 2006 Supp. 21-3504(a)(3)(A), which is an off-grid person felony. See K.S.A. 2006 Supp. 21-3504(c); K.S.A. 21-4706(d). Under Jessica's Law, this offense carries a sentence of imprisonment for life, with a "mandatory minimum term of imprisonment of not less than 25 years." K.S.A. 21-4643(a)(1). Ballard pled no contest to the charge. He and the State jointly requested a downward durational sentencing departure, from off-grid to the grid block appropriate for a severity level 3 person felony. This severity level felony carries a sentence of between 55 and 247 months in prison. K.S.A. 2006 Supp. 21-4704. In exchange for Ballard's plea, the State agreed not to file any additional charges.

The factual basis for the plea was straightforward. Early in the morning of January 1, 2007, Ballard and his wife returned home from a New Year's Eve party. Ballard's 11-year old niece, A.T., was watching television from the couch. When Ballard's wife went to the basement, he went to the couch and "put his hand down her [A.T.'s] pants underneath her panties and began touching her vagina. Even though he was called away by his wife downstairs, he continued to fondle her vagina with his hand inside of her pants." A.T. immediately told Ballard's wife and the event was eventually reported to law enforcement.

On September 11, 2007, Ballard filed a motion for a downward durational and dispositional departure to probation. In support, he argued that he had no felony criminal history and would fall into criminal history category "I." Ballard also argued that he was so intoxicated at the time of the offense that he had no recollection of it and that he mistook A.T. for his wife. Finally, he argued that A.T. and her family agreed that the underlying problem was alcohol addiction and they all wanted him to get probation and treatment. The State objected to Ballard's request for a dispositional departure, arguing that the court could not grant probation as a matter of law and that, even if it could, probation was inappropriate in this case.

At the sentencing hearing 3 days later, the court found that there were substantial and compelling reasons for a durational departure. As a mitigating circumstance, the court found that Ballard's capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of law was substantially impaired due to the use of alcohol. The court also noted that it was "taking into account the other arguments and evidence presented by your attorney and your family and your friends including all the letters and the information contained in that." It then imposed a sentence of 55 months in prison.

The judge denied Ballard's request for dispositional departure to probation, concluding, "I do not believe all the evidence under all the circumstances would warrant a further departure."

The court also imposed 36 months of postrelease supervision and indicated that Ballard would be eligible for earning good time credit of up to 15 percent. The State objected, arguing that even when there is a downward departure from an off-grid, life sentence to the Kansas Sentencing Guidelines Act, a lifetime of postrelease supervision is still required. The judge stated, "I am going to stay with the finding I previously made which is 36 months." However, he retained jurisdiction "to modify that order if it is in error and contrary to statute. Get with the court and counsel, and if I am in error, go ahead and file an appropriate motion, and I will take it up at that time."

Two weeks later, the court conducted another hearing. The State argued that the postrelease issues were governed by K.S.A. 2006 Supp. 22-3717(d)(1)(G), which mandates lifetime postrelease supervision for sexually violent crimes, and that no good time credit was allowed pursuant to K.S.A. 2006 Supp. 22-3717(b)(2). Defense counsel responded that because the court had departed from the life sentence to the sentencing guidelines, the appropriate postrelease term should be based on the sentence imposed pursuant to the guidelines, *e.g.*, 36 months. The court then increased Ballard's postrelease supervision period to life and held that he was not entitled to up to 15 percent good time credit:

"[Y]ou will be, pursuant to statute, specifically K.S.A. 22-3717, subject to lifetime post-release supervision unless otherwise is subsequently modified by statute. Furthermore, I am going to rule and find that I previously stated that you would be subject to potentially earn good time credit of up to 15 percent. The Court was in error in making that. The statute specifically provides otherwise, and so you will not be eligible for good time credit."

Other facts will be added as necessary to the analysis.

## ANALYSIS

Issue 1: *The district court did not abuse its discretion in denying a downward dispositional departure to probation.*

Ballard first claims the district court erred in denying his request for a downward dispositional departure to probation. He argues that he presented substantial and uncontested evidence in support of probation, and notes that the court found substantial and compelling reasons that justified a downward durational departure from a life sentence to 55 months. Ballard complains that the court "arbitrarily denied treatment for alcoholism problems that it acknowledged was at the core of this case." Because his evidence was uncontested, he argues the court acted arbitrarily and abused its discretion in refusing to grant probation.

As a threshold matter, the State argues that this court does not have jurisdiction to review Ballard's claims because he received a presumptive sentence. The State contends that because Ballard's sentence was ultimately calculated through use of a grid block, he received a presumptive sentence for that block's corresponding

offense. It cites *State v. Ortega-Cadelan*, 287 Kan. 157, 163, 194 P.3d 1195 (2008) (a presumptive sentence is a sentence "issued pursuant to a number in a grid block"). Admittedly, his sentence of 55 months corresponds exactly with the low-number, presumptive sentence for a person with a criminal history of "I" committing a Level 3 person felony. Jurisdiction is a question of law over which we have unlimited review. *State v. McCarley*, 287 Kan. 167, Syl. ¶ 8, 195 P.3d 230 (2008).

We begin our analysis by observing that the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, governs when a defendant may appeal his or her sentence. The KSGA provides that departure sentences are "subject to appeal by the defendant or the state." K.S.A. 21-4721(a). It defines a "departure" as "a sentence which is inconsistent with the presumptive sentence for an offender." K.S.A. 21-4703(f). The KSGA further provides that appellate courts "shall not review: (I) Any sentence that is within the *presumptive sentence* for the crime." (Emphasis added.) K.S.A. 21-4721(c)(1). It defines "presumptive sentence" as "the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime severity ranking of the current crime of conviction and the offender's criminal history." K.S.A. 21-4703(q).

We further observe that K.S.A. 2006 Supp. 21-4643, also known as Jessica's Law, requires that a defendant 18 years of age or older who is convicted of certain sexually violent crimes, including aggravated indecent liberties with a child, committed on or after July 1, 2006, must be sentenced to a term of imprisonment for life, with a mandatory minimum term of imprisonment of not less than 25 years. K.S.A. 21-4643(a)(1)(C); see *State v. Gracey*, 288 Kan. 252, 255, 200 P.3d 1275 (2009). However, the statute's subsection (d) allows a sentencing court to make a downward departure from this mandatory minimum term of imprisonment set out in (a)(1). Upon a finding of substantial and compelling reasons to depart, via subsection (d) the court may instead impose a sentence pursuant to the KSGA.

Subsection (d) of K.S.A. 2006 Supp. 21-4643 states in relevant part:

"On or after July 1, 2006, for a first time conviction of an offense listed in paragraph (a)(l), the sentencing judge shall impose the mandatory minimum term of imprisonment provided by subsection (a), *unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure. If the sentencing judge departs from such mandatory minimum term of imprisonment,* the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure. The *departure sentence* shall be the sentence pursuant to the sentencing guidelines act, K.S.A. 21-4701 *et seq.,* and amendments thereto, and no sentence of a mandatory minimum term of imprisonment shall be imposed hereunder." (Emphasis added.)

Resolution of this jurisdiction issue also requires statutory interpretation. Interpretation of statutes is a question of law over which this court has unlimited review. *State v. Storey,* 286 Kan. 7, 9-10, 179 P.3d 1137 (2008). When the language of a statute is plain and unambiguous, we cannot read into the statute language not readily found there. *Steffes v. City of Lawrence,* 284 Kan. 380, Syl. ¶ 2, 160 P.3d 843 (2007). Accordingly, we must reject the State's jurisdiction argument because subsection (d) clearly provides that if the sentencing court finds substantial and compelling reasons to depart, "[t]he *departure sentence* shall be the sentence pursuant to the sentencing guidelines act, K.S.A. 21-4701 *et seq."* (Emphasis added.) As a result, what Ballard received was not a presumptive sentence—even if his is identical to a presumptive sentence for someone with his criminal history committing a level 3 person felony. Instead, he received a departure sentence: a downward durational departure of 55 months from the life sentence provided for in K.S.A. 2006 Supp. 21-4643(a)(1). And departure sentences clearly are subject to appeal by the defendant. K.S.A. 21-4721(a).

As for the State's citation to *Ortega-Cadelan,* that decision actually cuts somewhat in favor of Ballard. There, defendant pled guilty to statutory rape as defined in K.S.A. 21-3502(a)(2). He was sentenced under Jessica's law, K.S.A. 2006 Supp. 21-4643(a)(1), to a mandatory life sentence without the possibility of parole for 25 years. He appealed his sentence, arguing the district court wrongly denied his motion for a downward durational departure to the grid block sentence corresponding to the severity level of his crime and his criminal history score. Like the instant case, the State argued lack of appellate court jurisdiction. Specifically, it argued that the

mandatory life sentence imposed under Jessica's Law was presumptive and therefore could not be appealed.

We rejected that argument. As the State in the instant case points out, we stated that defendant's sentence was not presumptive because presumptive sentences must be issued pursuant to a number in a grid block, citing K.S.A. 21-4703(q). What the State does not presently point out, however, is the additional basis for our holding: the sentence was not presumptive because the crime to which he pled guilty—statutory rape—was an off-grid crime. See, *e.g.*, K.S.A. 2006 Supp. 21-4706(d) (statutory rape was an "off-grid crime for the purposes of sentencing"). Similarly, the crime to which Ballard pled no contest, aggravated indecent liberties with a child, is an off-grid crime. See K.S.A. 2006 Supp. 21-4643(a)(1)(C); K.S.A. 2006 Supp. 21-4706(d). In fact, we have rejected the identical *Ortega-Cadelan* jurisdiction argument made by the State where defendant was convicted and sentenced under Jessica's Law for aggravated indecent liberties with a child. See *State v. Thomas*, 288 Kan. 157, 163, 199 P.3d 1265 (2009). We clearly have jurisdiction over off-grid crimes. See K.S.A. 22-3601(b)(1) (jurisdiction to review convictions of off-grid crimes committed on or after July 1, 1993).

Now that we have established appellate jurisdiction for this sentencing issue, we turn to Ballard's argument that the district court abused its discretion in denying his motion for departure to probation. *Ortega-Cadelan* provides additional guidance. Its defendant, similar to Ballard, cited several mitigating circumstances, including his lack of prior felony convictions and the sex offender evaluator's conclusion that he was a good candidate for sex offender treatment. *Ortega-Cadelan*, 287 Kan. at 162. The district court denied his request, finding, among other things, that his lack of criminal history was outweighed by " 'the extent of the crime and the impact of the crime upon a 5-year-old girl.' " 287 Kan. at 163. As in the instant case, the court also recognized that the defendant admitted responsibility, but did not find that to be a substantial and compelling reason to depart.

On review, we noted that "in considering other sentencing departure provisions, this court has reviewed a district court's weigh-

ing of aggravating and mitigating circumstances for abuse of discretion," and concluded that the same standard should apply in this context. 287 Kan. at 165. We concluded that the sentencing court had considered all of Ortega-Cadelan's arguments, acknowledged the mitigating circumstances, and explained why it chose to reject his request for a downward departure. 287 Kan. at 165. We held that because "[r]easonable people could agree with the district court's assessment of whether the mitigating circumstances were substantial and compelling," the district court did not abuse its discretion in denying the departure. 287 Kan. at 165-66.

In *Thomas*, as in the instant case, the defendant pled no contest to aggravated indecent liberties with a child under the age of 14. After receiving a hard 25 sentence under Jessica's Law, he challenged the court's refusal to grant not only a downward durational departure, but also, as here, a dispositional departure to probation. While the district court did not specifically reference any mitigating factors, it found that "a departure sentence would be 'insufficient' in this case, despite the fact that Thomas had presented some grounds for departure." *Thomas*, 288 Kan. at 163. Even though the district court did not outline its findings, this court held that "the court implicitly found that none of the reasons asserted by Thomas were substantial and compelling reasons to depart from the mandatory minimum sentence." 288 Kan. at 163. We again stated that we would "apply a broad abuse of discretion standard because this issue involves the district court's consideration and weighing of mitigating circumstances." 288 Kan. at 164. We concluded that the district court did not abuse its discretion in denying Thomas' motion for a downward durational departure or, like here, dispositional departure sentence under K.S.A. 2006 Supp. 21-4643(d). *Thomas*, 288 Kan. at 164.

One week later, in *Gracey*, 288 Kan. 252, this court elaborated on some of these sentencing principles in Jessica's Law cases. We observed that K.S.A. 2006 Supp. 21-4643(d) provides that in the presence of substantial and compelling reasons, the district court may impose a sentence pursuant to the sentencing guidelines. And "[o]nce sentencing has shifted to the sentencing guidelines, nothing precludes the district court from granting a departure, either

dispositional or durational. The decision whether to depart lies within the discretion of the sentencing court. See *Ortega-Cadelan*, 287 Kan. [157, 165, 194 P.3d 1195]." *Gracey*, 288 Kan. at 260. The magnitude of the departure is similarly within the court's discretion. *Cf. State v. Fadela*, 259 Kan. 215, 244, 911 P.2d 792 (1996) (upholding durational and dispositional departure sentence for conviction of attempted second-degree murder because no abuse of discretion).

Here, the district court outlined the mitigating factors that Ballard presented, *i.e.*, no felony criminal history; A.T. and her mother agreed they wanted him to get probation and treatment for his alcohol addiction, which they believed was the underlying problem; a psychologist testified that the "likelihood of his reoffending is at the lowest range" and also concluded that Ballard was not a pedophile or sexual predator. However, exercising its discretion, the court refused to grant a downward dispositional departure.

We hold that when considering departures, sentencing courts do not simply add together the total number of mitigating circumstances and then contrast them with the total number of aggravating circumstances. *Cf. State v. Sharp*, 289 Kan. 72, 81, 210 P.3d 590 (2009) (in reviewing confession for voluntariness, we do not "form our conclusion by simply listing this one factor as possibly favoring involuntariness and enumerating all those other factors possibly favoring voluntariness"); *State v. Thompson*, 284 Kan. 763, 804, 166 P.3d 1015 (2007) (in considering totality of circumstances to determine whether a consent to search is voluntary, "we do not expect courts to merely count the number of factors weighing on one side of the determination or the other.").

We conclude that reasonable minds could agree with Ballard's sentencing court's determination that the mitigating circumstances were not substantial and compelling to justify a departure to probation. See *Ortega-Cadelan*, 287 Kan. at 165-66. More specifically, we conclude that a departure from a "term of imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years" (K.S.A. 21-4643[a][1]) to 55 months' imprisonment—instead of a greater downward departure to probation—is

reasonable. Therefore, the district court did not abuse its discretion in denying Ballard's request.

It should also be noted that, in 2008, the legislature amended K.S.A. 21-4719(a), the statute on departure sentences, to prohibit a downward dispositional departure for any defendant convicted of a crime of extreme sexual violence, which includes aggravated indecent liberties. See K.S.A. 2008 Supp. 21-4719(a); *Gracey*, 288 Kan. at 260. However, this amendment became effective July 1, 2008, and does not apply to Ballard, who committed his crime in 2007.

*Issue 2: The district court did not err in changing Ballard's originally imposed postrelease supervision period from 36 months to lifetime supervision.*

Ballard next argues that the district court erred in changing his originally imposed period of postrelease supervision from 36 months to lifetime supervision. He essentially claims that because the court imposed a legal sentence at the initial proceeding, it did not have authority to increase that sentence 2 weeks later.

The State responds that the district court could amend the postrelease term because the court continued the sentencing proceeding. In the alternative, it argues that the court properly corrected an earlier-imposed, illegal sentence.

This issue requires statutory interpretation, which is a question of law over which this court has unlimited review. *Storey*, 286 Kan. at 9-10.

We begin our analysis by observing that courts generally do not have jurisdiction to increase legally imposed sentences. See *State v. Miller*, 260 Kan. 892, 900, 926 P.2d 652 (1996) (when a lawful sentence has been imposed, "the sentencing court has no jurisdiction to modify that sentence except to correct 'arithmetic or clerical errors' "). However, an illegal sentence can be corrected at any time. K.S.A. 22-3504; see *State v. Breedlove*, 285 Kan. 1006, 1009, 179 P.3d 1115 (2008). An illegal sentence under K.S.A. 22-3504(1) is a " 'sentence imposed by a court without jurisdiction; *a sentence which does not conform to the statutory provision,* either in the character or the term of the punishment authorized; or a sentence

which is ambiguous with respect to the time and manner in which it is to be served.' " (Emphasis added.) *Trotter v. State*, 288 Kan. 112, 126, 200 P.3d 1236 (2009) (quoting *State v. Edwards*, 281 Kan. 1334, 1336, 135 P.3d 1251 [2006]).

Ballard argues that 36 months' postrelease supervision was a legal sentence because it is the term expressly provided by the sentencing guidelines, and that he was given a guidelines sentence. He particularly points to K.S.A. 2006 Supp. 21-4643(d), which he contends governs sentences imposed when the district court makes downward departure findings in Jessica's Law cases. It provides that the "departure sentence shall be the sentence pursuant to the [KSGA]." Ballard reasons that this language takes him to the KSGA, particularly K.S.A. 2006 Supp. 22-3717(d)(1), which provides in relevant part:

"Persons sentenced for crimes, other than off-grid crimes, committed on or after July 1, 1993, or persons subject to subparagraph (G), will not be eligible for parole, but will be released to a mandatory period of postrelease supervision upon completion of the prison portion of their sentence as follows:

"(A) Except as provided in subparagraphs (D) and (E), persons sentenced for nondrug severity level 1 through 4 crimes and drug severity levels 1 and 2 crimes must serve 36 months, plus the amount of good time earned and retained pursuant to K.S.A. 21-4722, and amendments thereto, on postrelease supervision."

Ballard points to subsection (A), reasoning that his sentence of 55 months was a sentence for a nondrug severity level 3 crime, and concludes that per this subsection, he must serve 36 months of postrelease supervision. He readily concedes that K.S.A. 2006 Supp. 22-3717(d)(1)(G) mandates lifetime postrelease supervision for sexually violent crimes, and further concedes that his offense, aggravated indecent liberties with a child, is such a crime. See K.S.A. 2006 Supp. 22-3717(d)(2)(C). Subsection (d)(1)(G) provides:

"Except as provided in subsection (u), persons convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life."

Ballard argues that either 22-3717(d)(1)(A) or 22-3717(d)(1)(G) could apply. As a result, a postrelease term under either statute

would be legal. He contends that because the 36 months of post-release supervision was part of the sentence initially imposed, and it was legal, that sentence cannot be changed to a later, also legal, sentence of lifetime supervision.

We reject Ballard's analytical approach because he is caught by two exceptions to the general rule of 22-3717(d)(1)(A). First, he was not "sentenced for" a nondrug severity level 1 through 4 crime. Rather, he was sentenced for an off-grid crime. K.S.A. 21-3504(c); K.S.A. 2006 Supp. 21-4706(d) (when a defendant convicted under K.S.A. 21-3504 is 18 years of age or older and the victim is under 14 years of age, "such violations are off-grid crimes for the purposes of sentencing"). The fact that Ballard was granted a departure and received a grid sentence does not change the nature of his offense from an off-grid to a grid crime. Indeed, his filing of his appeal directly with this court, and not the Court of Appeals, tacitly admits this point. See K.S.A. 22-3601(b)(1) (appeal shall be taken directly to Supreme Court when maximum sentence of life imprisonment has been imposed or where defendant has been convicted of an off-grid crime). Accordingly, 22-3717(d)(1)(A) simply does not apply to Ballard.

Second, by Ballard's own admission, 22-3717(d)(1)(G) clearly does apply to him. Consistent with that statute, he was "convicted of a sexually violent crime committed on or about after July 1, 2006." See K.S.A. 22-3209(2); *State v. Holmes*, 222 Kan. 212, Syl. ¶ 1, 563 P.2d 480 (1977) (when court accepts a tendered plea of nolo contendere and adjudges a finding of guilt thereon, the defendant at that point stands convicted of the offense). Therefore, pursuant to subsection (G), he is subject to mandatory lifetime postrelease supervision.

Because Ballard's initial sentence of 36 months' postrelease supervision was based on the wrong statute, 22-3717(d)(1)(A), the district court had jurisdiction to correct the illegal sentence and impose the legal one under 22-3717(d)(1)(G). See K.S.A. 21-4704(e)(2); *State v. Gaudina*, 284 Kan. 354, 358, 160 P.3d 854 (2007) (postrelease supervision is included as part of a complete sentence). As such, the district court did not err in imposing lifetime postrelease supervision.

As a result of our decision, we need not consider the State's alternative argument regarding the continuance of the sentencing proceeding.

Issue 3: *The district court erred in finding Ballard ineligible for good time credit.*

Ballard finally argues that the district court erred in finding him ineligible for good time credit. Specifically, he claims the court erred in applying K.S.A. 2006 Supp. 22-3717(b)(5) instead of applying the good time credit specified by the sentencing guidelines in K.S.A. 21-4722. Because this issue involves statutory interpretation, this court's review is unlimited. *Storey*, 286 Kan. at 9-10.

The statute relied upon by the district court, 22-3717(b)(5), states: "An inmate sentenced to imprisonment pursuant to K.S.A. 2006 Supp. 21-4643, and amendments thereto, committed on or after July 1, 2006, shall be eligible for *parole* after serving the mandatory term of imprisonment without deduction of any good time credits." (Emphasis added.) Ballard again argues that he was not sentenced pursuant to 21-4643; instead, he was sentenced pursuant to the KSGA. He bases this argument upon the language of 21-4643(d), which, as mentioned earlier, states in relevant part:

"If the sentencing judge departs from such mandatory minimum term of imprisonment, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure. *The departure sentence shall be the sentence pursuant to the sentencing guidelines act, K.S.A. 21-4701 et seq.,* and amendments thereto, and no sentence of a mandatory minimum term of imprisonment shall be imposed hereunder." (Emphasis added.)

Part of the KSGA, *i.e.*, K.S.A. 2006 Supp. 21-4722(a), explains that a system of good time credit shall be developed allowing inmates to receive good time credit, limited to 15 percent of the prison part of the sentence. The statute further explains that good time credits are to be subtracted from the prison part of the sentence and added to the inmate's postrelease supervision obligation. K.S.A. 2006 Supp. 21-4722(b). It also gives the Secretary of Corrections authority to adopt rules and regulations to calculate and implement good time credits. K.S.A. 2006 Supp. 21-4722(c).

We agree with Ballard that 22-3717(b)(5) is not applicable to him. The statutory language addresses *parole* eligibility for offenders who are sentenced to imprisonment pursuant to 21-4643. The term "parole" generally means "the release of a prisoner to the community by the Kansas parole board prior to the expiration of such prisoner's term." K.S.A. 21-4602(d). Thus, "parole" is a term of art that is limited to off-grid crimes, *i.e.*, usually those receiving indeterminate sentences. *Cf. Thomas*, 288 Kan. at 159 (under K.S.A. 2006 Supp. 21-4643(a)(1)(C), district court ordered postrelease supervision for life if Thomas would be paroled from his mandatory life sentence without possibility of parole for 25 years). By contrast, the term "postrelease supervision" generally means "release of a prisoner to the community after having served a period of imprisonment or equivalent time served in a facility where credit for time served is awarded as set forth by the court, subject to conditions imposed by the Kansas parole board and to the secretary of correction's supervision." K.S.A. 21-4703(p). This term has traditionally been applied to only grid crimes.

Accordingly, the legislature's use of the term "parole" in 22-3717(b)(5) strongly suggests that the undeparted-from sentence of life imprisonment—pursuant to 21-4643(a)—is the sentence to which 22-3717(b)(5) refers. As a result, subsection (b)(5) does not apply when an offender receives a departure sentence from Jessica's Law, *i.e.*, a determinate sentence pursuant to 21-4643(d).

Here, Ballard received a departure sentence from Jessica's Law: a determinate sentence pursuant to the guidelines of 55 months' imprisonment. Consequently, when Ballard completes his prison sentence, he will be placed on postrelease supervision, not parole. Stated another way, he will not serve an indeterminate sentence and then be subject to parole, as he would have been if sentenced to life imprisonment pursuant to 21-4643(a). Because the provisions of 22-3717(b)(5) simply do not apply to Ballard, they cannot serve as the basis for denying him eligibility for good time credit.

The State does not point to any other authority which purports to specifically prohibit Ballard from receiving good time credit. It does argue, however, that he cannot receive good time credit if he is given lifetime postrelease supervision. The State points out that

21-4722 directs that good time credit be subtracted from the prison part of the sentence and added to the inmate's postrelease supervision obligation. It reasons that an inmate receiving lifetime postrelease could not earn good time credit because one cannot add time to supervision which is already for life.

Nevertheless, there is no specific statutory provision prohibiting Ballard from receiving good time credit. Thus, the general rule in 21-4722 applies, and he is eligible to earn good time credits of up to 15 percent of his prison sentence. In any event, while adding earned good time credits to Ballard's mandatory lifetime of postrelease supervision does not realistically affect that supervisory period, it does potentially affect the amount of time actually spent in prison. Ballard will be able to earn good time credit and potentially be released before his 55-month prison sentence would have been fully served. Thus, we reject the State's apparent position that Ballard is getting "something for nothing."

Affirmed in part, reversed in part, and remanded for resentencing to include Ballard's eligibility to earn good time credit.