IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,657

STATE OF KANSAS,
*Appellee*,

v.

SKYLER LEE BROOK,
*Appellant*.

SYLLABUS BY THE COURT

1.

Imposition of an underlying prison term after a probation violation is not equivalent to "incarceration for a supervision violation" under K.S.A. 2018 Supp. 22-3717(d)(3). The period of a person's postrelease supervision term may be modified while the person is serving his or her underlying prison sentence after probation revocation without running afoul of K.S.A. 2018 Supp. 22-3717(d)(3).

2.

K.S.A. 2013 Supp. 22-3717(d)(1)(D) applies only to persons convicted of a sexually violent crime on or after July 1, 1993, but before July 1, 2006. K.S.A. 2013 Supp. 22-3717(d)(1)(G) applies to persons convicted of a sexually violent crime on or after July 1, 2006. There are no persons convicted of a sexually violent crime to whom both subparagraph K.S.A. 2013 Supp. 22-3717(d)(1)(D) and subparagraph (d)(1)(G) apply.

Review of the judgment of the Court of Appeals in an unpublished opinion filed April 28, 2017. Appeal from Nemaha District Court; JOHN L. WEINGART, judge. Opinion filed May 10, 2019. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, was on the briefs for appellant.

*Brad M. Lippert*, county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Skyler Lee Brook appeals the district court's correction of his postrelease supervision term after his probation was revoked and he was ordered to serve his original sentence. He challenges the district court judge's statutory authority to change the term from two years to lifetime, and he argues the lifetime postrelease term constitutes cruel and unusual punishment.

We affirm the district judge's decision and our Court of Appeals' endorsement of it.

FACTUAL AND PROCEDURAL BACKGROUND

Brook pleaded no contest to sexual exploitation of a child as a result of interactions with C.B. between May 6 and May 20, 2013. Brook was 22 years old at the time. He was sentenced to 36 months in prison and 2 years of postrelease supervision. The district court judge suspended imposition of Brook's sentence and ordered Brook to serve 36 months' probation.

Brook committed another crime, which resulted in revocation of his probation and imposition of his original sentence in this case.

The Department of Corrections notified the court that Brook should have received a lifetime postrelease term because of his plea to a sexually violent crime. The district judge agreed that this portion of Brook's sentence was illegal and corrected the two-year postrelease term to lifetime.

Brook challenged the lifetime term before the Court of Appeals. The panel rejected his arguments, *State v. Brook*, No. 115,657, 2017 WL 1535138, at *6 (Kan. App. 2017) (unpublished opinion), and this court granted review.

DISCUSSION

Whether a sentence is illegal and may be corrected at any time is a question of law subject to unlimited review. See K.S.A. 2018 Supp. 22-3504(1); *State v. Horton*, 308 Kan. 757, 759, 423 P.3d 548 (2018). To the extent resolution of Brook's claims requires statutory interpretation, this court also is presented with a question of law subject to unlimited review. 308 Kan. at 759.

*Statutory Arguments*

Brook argues that his original two-year term of postrelease could not be corrected as an illegal sentence based on two different statutes.

The first statute is K.S.A. 2018 Supp. 22-3717(d)(3). That section states, "Persons serving a period of incarceration for a supervision violation shall not have the period of postrelease supervision modified until such person is released and returned to postrelease supervision." K.S.A. 2018 Supp. 22-3717(d)(3). Brook asserts that because he "violated

3

his supervision resulting in the revocation of his probation," K.S.A. 2018 Supp. 22-3717(d)(3) should prohibit modification of his postrelease supervision term.

The Court of Appeals panel correctly analyzed and disposed of this argument. There is no support for the proposition that the imposition of an underlying prison term after a probation violation is equivalent to "incarceration for a supervision violation." The panel said:

> "K.S.A. 2016 Supp. 22-3717 as a whole involves postrelease supervision. In K.S.A. 2016 Supp. 22-3717(d)(3) the words 'supervision violation' clearly refers to a violation of postrelease supervision and not a probation violation. The subject of K.S.A. 2016 Supp. 22-3717 is postrelease supervision and not probation. The statutory scheme for probation is set out in an entirely different statute. See K.S.A. 2016 Supp. 21-6604, K.S.A. 2016 Supp. 21-6607, and K.S.A. 2016 Supp. 21-6608 (establishing the sentencing scheme for probation); K.S.A. 2016 Supp. 22-3716 (establishing procedures for probation violations). The plain reading of K.S.A. 2016 Supp. 22-3717 shows that the legislature did not intend a probation violation to prevent modification of postrelease supervision." *Brook*, 2017 WL 1535138, at *2.

Moreover, the language of subsection (d)(3) itself indicates that the "supervision" referred to is postrelease supervision. The limitation to modifying a period of postrelease continues "until such person is released *and returned to* postrelease supervision." (Emphasis added.) K.S.A. 2018 Supp. 22-3717(d)(3).

Brook's second statutory argument is based on what he perceives to be conflicting subsections within K.S.A. 2013 Supp. 22-3717(d)(1). That statute provides in pertinent part:

> "(d)(1) Persons sentenced for crimes, other than off-grid crimes, committed on or after July 1, 1993, or persons subject to subparagraph (G), will not be eligible for parole,

4

but will be released to a mandatory period of postrelease supervision upon completion of the prison portion of their sentence as follows:

. . . .

(B) Except as provided in subparagraphs (D) and (E), persons sentenced for nondrug severity levels 5 and 6 crimes, drug severity level 3 crimes committed on or after July 1, 1993, but prior to July 1, 2012, and drug severity level 4 crimes committed on or after July 1, 2012, must serve 24 months on postrelease supervision.

. . . .

(D) Persons sentenced to a term of imprisonment that includes a sentence for a sexually violent crime as defined in K.S.A. 22-3717, and amendments thereto, a sexually motivated crime in which the offender has been ordered to register pursuant to subsection (d)(1)(D)(vii) of K.S.A. 22-3717, and amendments thereto, electronic solicitation, K.S.A. 21-3523, prior to its repeal, or K.S.A. 2013 Supp. 21-5509, and amendments thereto, or unlawful sexual relations, K.S.A. 21-3520, prior to its repeal, or K.S.A. 2013 Supp. 21-5512, and amendments thereto, shall serve the period of postrelease supervision as provided in subsections (d)(1)(A), (d)(1)(B) or (d)(1)(C) plus the amount of good time and program credit earned and retained pursuant to K.S.A. 21-4722, prior to its repeal, or K.S.A. 2013 Supp. 21-6821, and amendments thereto, on postrelease supervision.

. . . .

(G) Except as provided in subsection (u), persons convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life."

Brook argues that his original postrelease term was legal under subparagraphs (d)(1)(B) and (D). The Court of Appeals panel disagreed with this argument, relying on

5

*State v. Herrmann*, 53 Kan. App. 2d 147, 384 P.3d 1019 (2016), *rev. denied* 306 Kan. 1324 (2017). In *Herrmann*, another Court of Appeals panel had thoroughly analyzed the issue Brook raised:

"[Defendant Jon T.] Herrmann claims the district court erred in granting the State's motion to correct an illegal sentence because his original sentence of 24 months' postrelease supervision was legal and not subject to modification when the court granted the State's motion. The trial court does not have jurisdiction to modify a legal sentence once it is pronounced from the bench. *State v. Hall*, 298 Kan. 978, 983, 319 P.3d 506 (2014). The court does, however, have jurisdiction to modify an illegal sentence and can do so at any time. K.S.A. 22-3504(1). . . .

. . . .

"Herrmann argues the sentence of lifetime postrelease supervision is illegal . . . because it does not conform to subparagraph (D) of K.S.A. 2015 Supp. 22-3717(d)(1), which he asserts is the applicable statutory provision. Herrmann contends the post-2013 version of subparagraph (D) retroactively eliminates the statutory requirement that courts impose lifetime postrelease supervision for those convicted of sexually violent crimes. In response to Herrmann's argument, the State argues lifetime postrelease supervision readily conforms to the applicable statutory provision, which it asserts is subparagraph (G) of K.S.A. 2015 Supp. 22-3717(d)(1). . . . Given the dispute between the parties, we first must decide which statutory provision within K.S.A. 2015 Supp. 22-3717(d)(1) is applicable to Herrmann's case for purposes of imposing postrelease supervision before we can decide whether the lifetime postrelease supervision ordered conformed to that applicable statutory provision.

. . . .

"Generally, the crime and penalty in existence at the time of the offense are controlling, except where the legislature has given retroactive effect to statutory changes made after the commission of the crime. *State v. Van Cleave*, 239 Kan. 117, 122, 716

6

P.2d 580 (1986). At the time of Herrmann's offense, K.S.A. 2011 Supp. 22-3717(d)(1)(G) required that persons who committed a sexually violent crime after July 1, 2006, be sentenced to lifetime postrelease supervision. Attempted aggravated indecent liberties with a child was defined as a sexually violent crime under K.S.A. 2011 Supp. 22-3717(d)(2)(C) and (d)(2)(K). Herrmann does not contest that under K.S.A. 2011 Supp. 22-3717(d)(1)(G), as it existed at the time of his crime, he was subject to lifetime postrelease supervision.

"Rather, Herrmann argues that the 2013 amendments to K.S.A. 22-3717(d)(1) changed the law regarding postrelease supervision as it applies to persons sentenced for sexually violent crimes and that those changes apply retroactively to his case. He contends that new language in subparagraph (D) expressly applies to persons convicted of sexually violent crimes and directs the court to impose a term of postrelease supervision based on the severity level of the offense. Herrmann notes that the new language in subparagraph (D) requires 24 months' postrelease supervision for severity level 6 offenders like him, plus any good-time or program credit earned and retained.

"Herrmann acknowledges that the 2013 amendments to subparagraph (D) directing a term postrelease supervision based on severity level of the sexually violent crime committed did not modify subparagraph (G), which requires lifetime postrelease supervision for persons convicted of sexually violent crimes after July 1, 2006. Nevertheless, Herrmann asserts this fact is not fatal to his claim that the current subparagraph (D) controls his term of postrelease supervision. In support of this assertion, Herrmann claims the 2013 amendments to subparagraph (D) effectively created an option for courts to choose between when imposing postrelease supervision for persons convicted of sexually violent crimes: subparagraph (D) provides a term of months depending on the severity level of the crime, plus any good-time or program credits accrued while in prison, while subparagraph (G) requires lifetime postrelease supervision. In light of these two options, Herrmann asserts the original 24-month term of postrelease supervision imposed was legal after the 2013 amendments became effective because it conformed to one of the two applicable statutory provision options.

. . . .

7

"We find the plain language of the [2013 amended] statute clearly decides the issue presented. Subsection (d)(1) explains that persons sentenced for crimes committed after July 1, 1993, will not be eligible for parole; instead, they will be subject to mandatory postrelease supervision as provided in the subparagraphs that follow. Notably, however, this subsection (d)(1) expressly states that the mandatory postrelease supervision provided in the subparagraphs that follow *do not apply* to 'persons subject to subparagraph (G).' Subparagraph (G) provides that 'persons convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life.' Herrmann was convicted of attempted aggravated indecent liberties with a child, which is a sexually violent crime under subsection (d)(5)(C) and (d)(5)(M). His conviction occurred after July 1, 2006. Because Herrmann is subject to subparagraph (G), no other subparagraph following subsection (d)(1) applies to him—including subparagraph (D).

"As an alternative to the 'two option' argument above, Herrmann asserts K.S.A. 2015 Supp. 22-3717(d)(1) is ambiguous because the provisions of subparagraphs (D) and (G) directly conflict with each other on the proper term of postrelease supervision to impose: one provides for a term of months based on severity level of the sexually violent crime and the other requires a lifetime term. Herrmann argues that the rule of lenity should resolve the ambiguity in his favor by imposing the lesser of the two postrelease supervision terms. We disagree. The provisions in each subparagraph apply to a distinct class of persons. K.S.A. 22-3717 as a whole applies to all persons convicted of a crime after July 1, 1993. See L. 1992, ch. 239, sec. 270 ('Persons sentenced for crimes committed on or after July 1, 1993, will not be eligible for parole, but will be released to a mandatory period of postrelease supervision upon completion of the prison portion of their sentence.'). Subparagraph (G) was added to the statute in 2006 to create an explicit exception applicable only for 'persons convicted of a sexually violent crime committed on or after July 1, 2006.' See L. 2006, ch. 212, sec. 19 (also adding language to [d][1] excepting 'persons subject to subparagraph [G]'). Reading subparagraph (D) in pari materia, it falls under subsection (d)(1) and so applies to all persons but those expressly excluded: persons sentenced for off-grid crimes committed on or after July 1, 1993, and

8

persons committing a sexually violent crime on or after July 1, 2006, as stated in subparagraph (G). Therefore, subparagraph (D) only applies to persons convicted of a sexually violent crime after July 1, 1993, but before July 1, 2006. Thus, there are no persons convicted of a sexually violent crime to whom both subparagraph (D) and subparagraph (G) apply. Construing the statute as a whole and giving effect to all of the statutes, as this court must, there is no conflict or ambiguity in amended subsection (d)(1).

"The legislative history of the 2013 amendments confirms that the new language in subparagraph (D) was not intended to create a conflict with subparagraph (G). Instead, the changes were actually meant to maintain the same term of postrelease supervision for certain offenders, including persons who committed a sexually violent offense between July 1, 1993, and June 30, 2006, despite changes to reduce postrelease supervision generally. Prior to 2013, subparagraphs (A)-(C) assigned either 36, 24, or 12 months' postrelease supervision, respectively, 'plus the amount of good time and program credit earned and retained.' See, *e.g.*, K.S.A. 2012 Supp. 22-3717(d)(1)(A)-(C). The 2013 amendments deleted the language pertaining to good-time and program credits from subparagraphs (A)-(C)—in effect, reducing the length of postrelease supervision sentences by not requiring those credits to be added to a person's postrelease term. But the legislature did not want to provide that same benefit for persons convicted of certain crimes, including sexually violent crimes. So, the legislature also amended subparagraph (D) to provide an exception for persons convicted of sexually violent crimes so that earned good-time and program credits continued to be added to their postrelease supervision period. L. 2013, ch. 133, sec. 13. In a nutshell, the postrelease supervision calculation for persons convicted of a sexually violent crime between July 1, 1993, and June 30, 2006, remained the same as it was prior to the 2013 amendments.

"The analysis above is a straightforward reading of K.S.A. 2015 Supp. 22-3717(d)(1) as a whole in which subparagraphs (D) and (G) are read in a workable harmony, without assuming the legislature intended to enact contradictory or meaningless provisions. See *Keel*, 302 Kan. at 574. The plain language of subsection (d)(1) provides an exception for persons convicted of a sexually violent crime for an offense after July 1, 2006, in subparagraph (G). Herrmann committed his sexually violent offense after July 1,

9

2006; therefore, he is subject only to subparagraph (G). Because subparagraph (D) does not apply to him, there is no need to determine whether the amended provision would apply retroactively to his case." *Herrmann*, 53 Kan. App. 2d at 149-54.

The Legislature confirmed the *Herrmann* panel's interpretation of the statute two years ago by amending subparagraph (d)(1)(D) to apply to "[p]ersons sentenced to a term of imprisonment that includes a sentence for a sexually violent crime as defined in K.S.A. 22-3717, and amendments thereto, committed on or after July 1, 1993, *but prior to July 1, 2006*." (Emphasis added.) See K.S.A. 2018 Supp. 2018 22-3717(d)(1)(D).

Brook's original two-year term of postrelease was imposed after his probation was revoked. See *State v. Sandoval*, 308 Kan. 960, Syl., 425 P.3d 365 (2018) (upon probation revocation, judge may impose original sentence or sentence anew; when original sentence illegal, imposed upon revocation, illegality persists). It was illegal because it did not conform to applicable statutory requirements; it was therefore subject to later correction under K.S.A. 22-3504(1). 308 Kan. at 965; *State v. Roth*, 308 Kan. 970, 971-72, 424 P.3d 529 (2018).

*Constitutional Argument*

On petition for review, Brook also mounts a federal constitutional challenge to his lifetime postrelease term, arguing that it qualifies categorically as cruel and unusual punishment. He acknowledges that this court rejected this argument in *State v. Williams*, 298 Kan. 1075, 319 P.3d 528 (2014).

In *Williams*, this court held that "[l]ifetime postrelease supervision for a first-time offender over age 18 convicted of sexual exploitation of a child for crimes involving possession of pornographic images of children under age 18 is not categorically

10

disproportionate under the Eighth Amendment to the United States Constitution." 298 Kan. 1075, Syl. ¶ 8.

Brook urges us to jettison *Williams* because of this court's more recent decision in *State v. Dull*, 302 Kan. 32, 351 P.3d 641 (2015).

In *Dull*, we held that "[m]andatory lifetime postrelease supervision is categorically unconstitutional under *Graham v. Florida,* 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), when imposed on a juvenile who committed and was later convicted of aggravated indecent liberties with a child." *Dull*, 302 Kan. 32, Syl. ¶ 8.

As the Court of Appeals panel in this case noted, the *Dull* opinion explicitly distinguished juvenile offenders, such as the defendant in *Dull*, from adult offenders, such as Brook:

> "While we have found mandatory lifetime postrelease supervision constitutional for adults, the same factors that result in a diminished culpability for juveniles, *i.e.*, recklessness, immaturity, irresponsibility, impetuousness, and ill-considered decision making, along with their lower risks of recidivism, all diminish the penological goals of lifetime supervision for juvenile sex offenders." 302 Kan. 32, Syl. ¶ 7.

We still hold this distinction to be valid and dispositive. Brook's categorical challenge to his lifetime postrelease term fails.

CONCLUSION

The district court judge did not err in correcting Brook's two-year postrelease term to lifetime. We affirm his judgment and the decision of the Court of Appeals upholding it.

11