NOT DESIGNATED FOR PUBLICATION

No. 119,866

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEPHEN MONTREAL DUNN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; F. WILLIAM CULLINS, judge. Opinion filed July 5, 2019. Affirmed in part, sentence vacated, and case remanded with directions.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Rachel L. Pickering*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., GREEN and POWELL, JJ.

PER CURIAM: Stephen Montreal Dunn appeals the sentence the Montgomery County District Court imposed for his conviction of rape. Dunn claims the district court erred because it imposed lifetime postrelease supervision, electronic monitoring of that supervision, and it failed to grant him good time credit. For the first time on appeal, the State claims the district court imposed an illegal sentence by departing more than 50 percent from a standard guideline sentence under the Kansas Sentencing Guidelines Act (KSGA). The State is correct. The sentence must be vacated.

1

Dunn is also partially correct. The district court erred in not granting him good time credit and by imposing lifetime postrelease electronic monitoring. Even so, the district court did not err by imposing lifetime postrelease supervision. We affirm in part, vacate the sentence, and remand with directions for resentencing.

FACTS

The State charged Dunn with the statutory rape of a 12-year-old girl which occurred when he was 18 years of age. After plea negotiations, Dunn entered a no contest plea to the rape charge and the State dismissed unrelated criminal charges in another case. Dunn also agreed to pay restitution for the dismissed charges. At the plea hearing, the State referenced an addendum to the plea agreement requiring Dunn to register as a sex offender for the rest of his life. Dunn acknowledged he was aware of this addendum.

Before sentencing, Dunn moved for a dispositional and durational sentencing departure. At the sentencing hearing, the district court granted Dunn's request, departed from the presumptive life sentence to the sentencing grid, and further reduced the sentence from the applicable grid penalties to 78 months' imprisonment. The court based the departure on Dunn's young age when he committed the offense, the desire of the victim's family to see a lesser sentence imposed, the victim's willing participation in the sexual intercourse, and the court's belief Dunn's remorse was heartfelt and sincere. The court originally ordered Dunn to serve 60 months of postrelease supervision. The State objected, and the court continued the sentencing hearing so the parties could brief the issues of applicable postrelease supervision period and good time credit.

After receiving briefs from the parties, the district court reconvened the sentencing hearing and imposed lifetime postrelease supervision with lifetime electronic monitoring. The court also found Dunn was not entitled to good time credit.

ANALYSIS

*Dunn's departure sentence is illegal*

The State contends the sentence imposed by the district court constituted an illegal sentence. The State neither raised the issue in the district court nor filed a separate appeal from the judgment imposed by the district court. Typically, the lack of a timely notice of appeal would deprive this court of jurisdiction over the issue. See *State v. Sanchez-Loredo*, 294 Kan. 50, 53, 272 P.3d 34 (2012) (citing *Douglas v. Lombardino*, 236 Kan. 471, 490, 693 P.2d 1138 [1985]). But the Kansas Supreme Court has authorized the State to challenge the legality of Dunn's sentence because a party that did not take an appeal or file a motion to correct illegal sentence may still challenge a sentence's illegality during the other party's appeal. See *State v. Spencer*, 291 Kan. 796, 820, 248 P.3d 256 (2011) (citing *State v. Gracey*, 288 Kan. 252, 260-61, 200 P.3d 1275 [2009]); see also K.S.A. 2018 Supp. 22-3504(a) (authorizing courts to correct an illegal sentence "at any time" while the defendant is serving such sentence).

An illegal sentence within the meaning of K.S.A. 2018 Supp. 22-3504(3) is a sentence imposed by a court without jurisdiction; a sentence that does not conform to the applicable statutory provisions, either in character or term of authorized punishment; or a sentence ambiguous with respect to the time and manner in which it is to be served. *State v. Hayes*, 307 Kan. 537, 538, 411 P.3d 1225 (2018). The State contends the sentence imposed upon Dunn by the district court failed to conform with the applicable statutory provisions, namely K.S.A. 2018 Supp. 21-6818(a), which states:

> "When a departure sentence is appropriate, the sentencing judge may depart from the sentencing guidelines as provided in this section. The sentencing judge shall not impose a downward dispositional departure sentence for any crime of extreme sexual violence, as defined in K.S.A. 2018 Supp. 21-6815, and amendments thereto. The sentencing judge shall not impose a downward durational departure sentence for any crime of extreme sexual violence, as defined in K.S.A. 2018 Supp. 21-6815, and

3

amendments thereto, to less than 50% of the center of the range of the sentence for such crime."

A crime of extreme sexual violence is statutorily defined to encompass "a crime involving an act of sexual intercourse, sodomy or lewd fondling and touching with any child who is less than 14 years of age." K.S.A. 2018 Supp. 21-6815(c)(2)(F)(i)(c). Statutory rape falls within this definition. See K.S.A. 2018 Supp. 21-5503(a)(3). Consequently, the district court was statutorily limited and could not reduce the durational departure sentence to less than 50 percent of the standard penalty within the applicable guidelines grid.

At sentencing, Dunn's criminal history score was H. When the district court departed to the sentencing grid block, the severity level of Dunn's crime became a severity level 1 person felony. See K.S.A. 2018 Supp. 21-5503(b)(1)(B) (sexual intercourse with a child under the age of 14 is a severity level 1 person felony without the aggravating factor of the offender's age). This placed Dunn in a sentencing grid box of 166-176-186 months. See K.S.A. 2018 Supp. 21-6804(a). Half the standard penalty within that grid box (176 months) is 88 months. By imposing a sentence less than 88 months, the district court violated K.S.A. 2018 Supp. 21-6818(a), rendering the sentence illegal. Dunn concedes as much in his reply brief. Consequently, the sentence must be vacated and we remand for resentencing.

*Dunn's claims on appeal*

We now turn to address Dunn's three issues on appeal. He first argues the district court erred in finding he was not entitled to good time credit based on his departure sentence. Second, he argues it was improper for the district court to impose lifetime electronic monitoring during his lifetime postrelease period of supervision. Third, he

4

argues the district court erred in concluding it must impose lifetime postrelease supervision.

*Dunn is entitled to good time credit*

Dunn correctly contends the district court erred in ordering no good time credit be applied to his sentences. The State concedes this issue is controlled by *State v. Ballard*, 289 Kan. 1000, 1014, 218 P.3d 432 (2009).

> "Here, Ballard received a departure sentence from Jessica's Law: a determinate sentence pursuant to the guidelines of 55 months' imprisonment. Consequently, when Ballard completes his prison sentence, he will be placed on postrelease supervision, not parole. Stated another way, he will not serve an indeterminate sentence and then be subject to parole, as he would have been if sentenced to life imprisonment pursuant to 21-4643(a). Because the provisions of 22-3717(b)(5) simply do not apply to Ballard, they cannot serve as the basis for denying him eligibility for good time credit." *Ballard*, 289 Kan. at 1014.

Ballard's and Dunn's sentences are analogous because both are durational departure sentences. This court is bound by the precedent set by *Ballard*. See *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). The district court erred when it denied Dunn the right to earn good time credit to his sentences.

*Dunn is not subject to lifetime postrelease electronic monitoring*

Dunn next challenges the district court's order imposing lifetime electronic monitoring during his postrelease supervision period. To consider this argument we must analyze the interplay of several sentencing statutes. The proper interpretation of statutes constitutes a question of law over which an appellate court exercises unlimited review. *State v. Warren*, 307 Kan. 609, 612, 412 P.3d 993 (2018). The fundamental goal of statutory construction is to give effect to the legislative intent of the statute. *State v.*

*Jordan*, 303 Kan. 1017, 1019, 370 P.3d 416 (2016). Typically, this statutory intent is ascertained by giving ordinary meaning to the plain language of the statute. Only when a statutory provision is genuinely ambiguous should a court resort to canons of construction or legislative history to give meaning to the statute. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016).

K.S.A. 2018 Supp. 22-3717(u) provides:

"An inmate sentenced to imprisonment pursuant to K.S.A. 21-4643, prior to its repeal, or K.S.A. 21-6627, and amendments thereto, for crimes committed on or after July 1, 2006, shall be placed on parole for life and shall not be discharged from supervision by the prisoner review board. When the board orders the parole of an inmate pursuant to this subsection, *the board shall* order as a condition of parole that the inmate be electronically monitored for the duration of the inmate's natural life." (Emphasis added.)

Previously construing this provision, our Supreme Court has ruled lifetime electronic monitoring is not a function of the court but a function of the Kansas Prisoner Review Board (Board) in establishing conditions of parole. *State v. Waggoner*, 297 Kan. 94, 100, 298 P.3d 333 (2013) ("It is well established that although lifetime electronic monitoring is mandated by K.S.A. 2012 Supp. 22-3717(u), 'the sentencing court does not have the authority to impose parole conditions.'" [Quoting *State v. Mason*, 294 Kan. 675, 677, 279 P.3d 707 (2012)]). Neither *Waggoner* nor *Mason* refer to K.S.A. 2018 Supp. 21-6604(r), which reads:

"In addition to any other penalty or disposition imposed by law, for any defendant sentenced to imprisonment pursuant to K.S.A. 21-4643, prior to its repeal, or K.S.A. 2018 Supp. 21-6627, and amendments thereto, for crimes committed on or after July 1, 2006, *the court shall* order that the defendant be electronically monitored upon release from imprisonment for the duration of the defendant's natural life and that the

6

defendant shall reimburse the state for all or part of the cost of such monitoring as determined by the prisoner review board." (Emphasis added.)

Based on a plain reading of the two statutes, K.S.A. 2018 Supp. 21-6604(r) irreconcilably conflicts with K.S.A. 2018 Supp. 22-3717(u). K.S.A. 2018 Supp. 22-3717(u) places the responsibility of ordering lifetime electronic monitoring on the Board. However, K.S.A. 2018 Supp. 21-6604(r) places the responsibility of ordering lifetime electronic monitoring on the sentencing court, while leaving the decision about how much the prisoner is to reimburse the State for electronic monitoring to the Board. While this conflict is disturbing, it is unnecessary to resolve the conflict in this appeal because both provisions indicate lifetime electronic monitoring is imposed in conjunction with parole granted for an indeterminate life sentence.

Parole applies to an indeterminate sentence and postrelease supervision applies to a determinate sentence. *Ballard*, 289 Kan. at 1014. When a criminal defendant is given an indeterminate life sentence, only the Board determines whether parole should be granted and the conditions by which parole is to be served. See *Waggoner*, 297 Kan. at 99. Conversely, when a criminal defendant is given a determinate sentence under the KSGA, the defendant's release is determined by the length of the controlling sentence imposed by the district court minus good time credit. See *State v. Gaudina*, 284 Kan. 354, 358, 160 P.3d 854 (2007) (noting that complete sentence under the KSGA includes "the prison sentence, the maximum potential reduction to such sentence as a result of good time and the period of postrelease supervision"). When the district court departed to the KSGA, the court gave Dunn a determinate sentence under the KSGA.

But both K.S.A. 2018 Supp. 21-6604(r) and K.S.A. 2018 Supp. 22-3717(u) refer to a sentence imposed under K.S.A. 2018 Supp. 21-6627. Subsection (a)(1) of that statute directs:

"Except as provided in subsection (b) or (d), a defendant who is 18 years of age or older and is convicted of the following crimes committed on or after July 1, 2006, shall be sentenced to a term of imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years unless the court determines that the defendant should be sentenced as determined in subsection (a)(2)."

The listed crimes include rape. See K.S.A. 2018 Supp. 21-6627(a)(1)(B). K.S.A. 2018 Supp. 21-6627 provides a few statutory exceptions for sentencing a criminal defendant to an indeterminate sentence of imprisonment for life without parole for 25 years. Most of the exceptions do not apply to Dunn and involve imposing a harsher indeterminate life sentence. See K.S.A. 2018 Supp. 21-6627(a)(2), (b)(1), and (b)(2). However, subsection (d) provides an exception authorizing the district court to depart from the presumptive indeterminate life sentence to the sentencing grid. While K.S.A. 2018 Supp. 21-6627(d) authorizes a departure from K.S.A. 2018 Supp. 21-6627(a), if the court finds substantial and compelling reasons to depart, the sentence imposed is no longer under the authority of K.S.A. 2018 Supp. 21-6627. Instead, if the court departs, the defendant is sentenced pursuant to the provisions of K.S.A. 2018 Supp. 21-6818 and "no sentence of a mandatory minimum term of imprisonment shall be imposed hereunder." K.S.A. 2018 Supp. 21-6627(d)(1). Turning to K.S.A. 2018 Supp. 21-6818, that statute provides:

"(a) When a departure sentence is appropriate, the sentencing judge may depart from the sentencing guidelines as provided in this section. The sentencing judge shall not impose a downward dispositional departure sentence for any crime of extreme sexual violence, as defined in K.S.A. 2018 Supp. 21-6815, and amendments thereto. The sentencing judge shall not impose a downward durational departure sentence for any crime of extreme sexual violence, as defined in K.S.A. 2018 Supp. 21-6815, and amendments thereto, to less than 50% of the center of the range of the sentence for such crime.
"(b) When a sentencing judge departs in setting the duration of a presumptive term of imprisonment:

8

(1) The judge shall consider and apply the sentencing guidelines, to impose a sentence that is proportionate to the severity of the crime of conviction and the offender's criminal history; and

(2) the presumptive term of imprisonment set in such departure shall not total more than double the maximum duration of the presumptive imprisonment term."

Considering these provisions together, a sentence imposed under K.S.A. 2018 Supp. 21-6627 is an indeterminate life sentence with various parole eligibility, not a guidelines sentence imposed under K.S.A. 2018 Supp. 21-6818 under the authority of K.S.A. 2018 Supp. 21-6627(d). When the Kansas Legislature mandated the imposition of lifetime electronic monitoring under either K.S.A. 2018 Supp. 21-6604(r) or K.S.A. 2018 Supp. 22-3717(u) for sentences imposed under K.S.A. 2018 Supp. 21-6627, the Legislature reserved lifetime electronic monitoring to parolees, not persons subject to postrelease supervision after serving a determinate sentence. Consequently, the district court erred in imposing lifetime electronic monitoring on Dunn. Dunn's lifetime postrelease electronic monitoring sentence must be vacated. See *Waggoner*, 297 Kan. at 100 (simply vacating the part of sentencing that ordered lifetime electronic monitoring).

*Lifetime postrelease supervision applies to Dunn*

Finally, Dunn contends the district court erred in failing to realize it possessed discretion to impose a length of postrelease supervision for less than Dunn's natural life.

As a preliminary matter, Dunn seems to suggest the district court lost jurisdiction to modify the term of postrelease supervision once it had announced the 60-month term from the bench. A district court loses jurisdiction to modify a sentence after the sentence is pronounced from the bench. See *State v. Tafoya*, 304 Kan. 663, 666-67, 372 P.3d 1247 (2016). An exception applies to illegal sentences corrected before sentencing is complete. *Tafoya*, 304 Kan. at 667. After announcing Dunn's sentence and postrelease supervision period at the first sentencing hearing, the State challenged the postrelease supervision

9

period imposed by the court before the hearing had concluded. The district court then continued the hearing and by doing so specifically retained jurisdiction over sentencing to permit the parties to brief the sentencing issues. The district court did not lose jurisdiction to change Dunn's period of postrelease supervision.

Even if Dunn is correct the district court lost jurisdiction to modify the sentence announced from the bench at the first sentencing hearing, this court must remand the case for resentencing. Nothing would prevent the State from making the same argument regarding the imposition of lifetime postrelease supervision on remand. See *Tafoya*, 304 Kan. at 667.

> "[A] district court has no authority to modify unchallenged sentences following a remand by an appellate court except when modification is needed to correct arithmetic or clerical errors. [Citation omitted.] The only other exception occurs when a sentence is determined to be illegal within the meaning of K.S.A. 22-3504, which may happen at any time. [Citation omitted.]" *Tafoya*, 304 Kan. at 667.

Kansas appellate courts have consistently held the failure to impose the mandatory period of lifetime postrelease supervision constitutes an illegal sentence. *State v. Brook*, 309 Kan. 780, 786, 440 P.3d 570 (2019) (authorizing modification of sentence to lifetime postrelease supervision at probation revocation because the previously imposed postrelease supervision period of 24 months constituted an illegal sentence); *State v. Cameron*, 294 Kan. 884, 898-900, 281 P.3d 143 (2012); *State v. Hermann*, 53 Kan. App. 2d 147, 149-54, 384 P.3d 1010 (2016), *rev. denied* 306 Kan. 1324 (2017).

Dunn contends, however, the imposition of lifetime postrelease supervision was not mandatory in his case because the district court granted a departure sentence. Again, the resolution of the issue is controlled by statutory interpretation subject to unlimited review. *Warren*, 307 Kan. at 612.

"(d)(1) Persons sentenced for crimes, other than off-grid crimes, committed on or after July 1, 1993, or persons subject to subparagraph (G), will not be eligible for parole, but will be released to a mandatory period of postrelease supervision upon completion of the prison portion of their sentence as follows:

. . . .

(G)(i) Except as provided in subsection (u), persons sentenced to imprisonment for a sexually violent crime committed on or after July 1, 2006, when the offender was 18 years of age or older, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life." K.S.A. 2018 Supp. 22-3717(d)(1)(G)(i).

The plain statutory language of (d)(1) applies only to determinate sentences. Dunn received a determinate sentence through a durational departure. But subsection (d)(1) specifically notes offenses described in K.S.A. 2018 Supp. 22-3717(d)(1)(G)(i)—sexually violent crimes committed by an offender 18 years of age or older—have a specific postrelease period assigned that differs from the varied postrelease supervision periods assigned to crimes based on severity level. By its plain language, K.S.A. 2018 Supp. 22-3717(d)(1)(G)(i) imposes a mandatory lifetime postrelease supervision period to convictions for sexually violent crimes where the offender is 18 years of age or older. The only exception provided is when such an offender is assigned an off-grid, indeterminate sentence. In that case, parole rather than postrelease supervision governs. See *Ballard*, 289 Kan. at 1014. The broad inclusive language of these statutory provisions encompasses determinate sentences imposed as the result of a sentencing departure from a presumptive indeterminate life sentence.

Dunn argues a conflict exists between K.S.A. 2018 Supp. 21-6818(b)(1) (authorizing the court to consider and apply the KSGA in departing from an off-grid sentence to the KSGA) and K.S.A. 2018 Supp. 21-3717(d)(1)(G)(i) (establishing mandatory lifetime postrelease supervision). The provisions are not in conflict.

11

K.S.A. 2018 Supp. 21-6818(b)(1) directs the sentencing court to consider the KSGA when departing from the life sentence presumptively applied to an off-grid offense. As Dunn correctly notes, postrelease supervision period is a part of a KSGA sentence. See *Gaudina*, 284 Kan. at 358. But K.S.A. 2018 Supp. 21-6818 does not direct the authorized dispositions for postrelease supervision periods. Whether the sentence imposed was a presumptive guidelines sentence or a departure sentence under K.S.A. 2018 Supp. 21-6818(b)(1), the district court would need to refer to other statutory provisions to determine the appropriate prison term and postrelease supervision period for the crime of conviction. See, e.g., K.S.A. 2018 Supp. 21-6804(a) (sentencing grid); K.S.A. 2018 Supp. 21-6815 (listing aggravating and mitigating departure factors).

K.S.A. 2018 Supp. 22-3717(d)(1)—including subsection (d)(1)(G)(i)—governs the terms of postrelease supervision. There is no conflict in applying both provisions to establish Dunn's departure sentence. The structure and language of K.S.A. 2018 Supp. 22-3717(d)(1) reveals clear legislative intent to create a mandatory period of lifetime postrelease supervision for crimes like Dunn committed, unless the defendant receives an off-grid indeterminate life sentence. Contrary to Dunn's argument, the district court lacked discretion to impose a lesser period of postrelease supervision under the circumstances of this case. The district court properly imposed a period of lifetime postrelease supervision on Dunn.

Affirmed in part, sentence vacated, and case remanded for resentencing.